Aaron E. Koota, J.
This proceeding is an inquiry into the insanity of defendant as provided in section 658 et seq. of the Code of Criminal Procedure. The People move to confirm reports of the Psychiatric Division of Kings County Hospital which find that defendant is not in such a state of idiocy, imbecility or insanity as to be incapable of understanding the charges against him, or the proceedings, or of making his defense. Two psychiatrists retained by the defense were of a contrary opinion. Pursuant to .section 662-a, hearings were held before this court on May 28 and May 29, 1969 at which all four psychiatrists testified.
The indictment filed in May, 1967 accuses the defendant, in three counts, of murder in the first degree committed on the 23rd day of February, 1967. The defendant is charged with strangling his wife and two infant children. The testimony indicates a deep-rooted jealousy by defendant, of his wife. He suspected her of infidelity. On many occasions violent quardels ensued. Defendant’s wife was employed. On the day of the alleged crime she advised defendant that she would be working late. When his wife returned late that night, he, suspecting that his wife had been engaged in amorous dalliance, remonstrated with her, a violent quarrel ensued and, in order to quiet his wife, he strangled her. The two children, victims of defendant’s maniacal outburst, were asleep. In order that they might not awaken to find their mother dead, with the consequent emotional shock, he strangled each of the children. He knew that they would go to Heaven, since at their tender age they were without sin. He believed that his wife too was somewhere in the skies looking down upon the scene and in order to arouse her anger and distress, he proceeded to ravish her lifeless body believing that .she was watching the act from above.
Defendant did not testify at the hearing but the court had an opportunity to observe his demeanor in the course thereof. He seemed to be imperturbable, completely oblivious to the surroundings about him, constantly staring vacuously into empty space. He appeared to be isolated living in a world apart, divorced from reality. The consensus of the four psychiatrists is that the defendant is schizophrenic. The experts differed in their conclusion as to whether this condition affected his mental capacity to stand trial. The hearing, sub judice, was conducted in a calm and placid atmosphere in a courtroom practically deserted. The trial of the indictment, however, will be bathed in an entirely different atmosphere. The crime has aroused intense public interest. Before a jury and a court *173 room crowded with spectators and the press, in the excitement necessarily generated, and being compelled to relive the details of these horrendous acts, defendant’s ability to withstand the strain of a lengthy trial is .seriously in doubt.
One of the People’s witnesses testified that as of May, 1967 the defendant was overtly or patently mentally ill but that in November of 1968 the defendant’s illness was latent. Although now, reported this psychiatrist, defendant’s illness was of a latent type, in May, 1967, in his opinion, the defendant was not mentally capable of standing trial. He concluded that there is a possibility, although improbable, that the latent schizophrenic tendencies of the defendant might become overt in a long and arduous trial. The other expert called by the People stated that, albeit defendant was presently mentally sane within the meaning of section 658 of the Code of Criminal Procedure, there was still a question of how he would bear up under the strain of a trial. Both psychiatrists were of the opinion that there was a possibility of a breakdown under extreme pressure of the trial, although not probable. One of the psychiatrists who testified for the defendant stated that the latter was presently psychotic and unable to participate in a substantial manner in his defense; that there would be a pronounced psychotic reaction under the strains and pressures of a trial in a greater or lesser degree; that while defendant understands the nature of the charges against him in a superficial manner he does not fully appreciate them. Another psychiatrist for the defense said that while defendant can understand the charge against him in a certain sense, it is only in a simple way but, if the term understanding is to include an evaluation and appreciation of the charges and an ability to make an intelligent defense, then defendant’s state of mind would preclude this possibility. The defendant, he testified, appears to justify some of the conduct involved in the homicide. This would impair his ability to make a defense. He does not see things in good contact with reality. There is a “ strong probability” of defendant breaking down in a long and arduous trial.
The defendant contends that the burden of proof of establishing mental capacity rests upon the People. He invokes the well-established legal maxim of the presumption of continuance.
In April, 1967 defendant was committed to the Manhattan State Hospital pursuant to section 872 of the Code of Criminal Procedure upon a finding that he lacked sufficient mental capacity to stand trial. In May, 1967 a Justice of this court ordered defendant retained at Manhattan State Hospital pur *174 suant to section 73 of the Mental Hygiene Law upon the hospital’s finding of his continued psychosis. In November, 1967, pursuant to a further order of the court, defendant’s retention at Manhattan State Hospital pursuant to the Mental Hygiene Law was continued upon the finding that he was still psychotic. On August 14, 1967 this court appointed a committee of the person and property of the defendant up the petition of the Director of Manhattan State Hospital asserting that defendant was unable to conduct his personal or business affairs. His incompetency thus established, defendant argues a presumption of fact arises that this state has continued and still persists at the date of these hearings. Consequently, the burden rests with the prosecution to overcome such presumption. (Cf. Clark v. Beto, 359 F. 2d 554; Noble v. Sigler, 351 F. 2d 673; Ashley v. Pescor, 147 F. 2d 318; People v. Thompson, 36 Ill. 2d 332; Jordan v. State, 124 Tenn. 81; People ex rel. Thaw v. Lamb, 118 N. Y. S. 389, 392; Fish, N. Y. Law of Evidence [1959], § 1122 and cases cited; Ann. 27 ALR 2d 121, 152.)
Defendant urges further that as in the case of ultimate guilt, the burden of proving mental capacity to stand trial rests upon the People. Although chapter V of title XII of the Code of Criminal Procedure provides a comprehensive scheme for inquiry into the insanity of a defendant before or during the trial, or after conviction, curiously there is no provision concerning the burden of proof, nor does there appear to be any authoritative appellate resolution of this issue. The rationale of People v. Gonzalez (20 N Y 2d 289) would indicate that the burden of establishing present sanity rests upon the People. Again, our Court of Appeals impliedly intimated that the burden rests with the People when in People v. Esposito, (287 N. Y. 389, 394), dealing with a psychiatric examination pursuant to section 658 of the Code of Criminal Procedure, the court held that ‘1 the trial court was justified in finding there was no ‘ reasonable ground for believing ’ the defendants’ assertions of insanity”. The negative pregnant in this language suggests that had the defendant created merely a reasonable ground for believing that he was incapable of standing trial the burden would have shifted to the prosecution to prove his mental capacity beyond a reasonable doubt. In People v. De Francesco (20 Misc 2d 854) the court found no doult that the defendant knew and understood the charge against her and was able to make a defense. (See, also, People v. Irwin, 166 Misc. 751; United States v. Chisolm, 149 F. 284, 289-290; Pate v. Robinson, 383 U. S. 375.)
*175 Fundamental principles underlying the judicial criminal process would appear to support the conclusion that the burden of establishing sanity rests upon the People. This would flow naturally from the cardinal principle that the responsibility of establishing guilt of a defendant beyond a reasonable doubt rests with the accuser.
However, discussion as to burden of proof, while academically of interest, is not dispositive of the issue raised herein. The ultimate question is whether, considering the totality of circumstances evinced in this record, defendant is mentally able to stand trial. A step further: it would appear to this court that even if there is substantial and pervasive doubt as to defendant’s capacity, it should be resolved in favor of a conclusion of insanity. To put this defendant to his trial for crimes so serious as are those charged against him, where grave doubt exists as to his mental capacity to understand the accusations and to assist substantially in his defense, would be contrary even to the most rudimentary concept of justice and fairness. Upon review of the evidence there is a strong, lingering doubt in the mind of this court as to defendant’s mental capacity to stand trial.
Section 662 of the Code of Criminal Procedure mandates a determination as to whether the defendant is in “ such a state of idiocy, imbecility or insanity as to be incapable of understanding the charge against him, or the proceedings or of making his defense.” Although no standards are statutorily established for such determination, it must be obvious that sanity within the framework of section 662 involves more than a superficial knowledge by defendant that he is charged with a particular crime and can recall the incident at the time of its commission. Hess & Thomas, writing on Incompetency to Stand Trial: Procedures, Results, and Problems, 119 Am.J.Psych. 713, 719-720 (1963), acknowledged that with the exception of relatively few severely regressed mentally ill patients or in instances of severe organic damage, any person is capable of understanding what is happening to him. Therefore, with few exceptions, all defendants could be considered competent; but in such cases where defendant might be a raving maniac, expert psychiatric testimony would hardly be required. The problem arises where the nature of the emotional disturbance is such that it becomes exceedingly difficult to arrive at a conclusion which would deal with a defendant in some fair and appropriate fashion. There is judicial authority for the proposition that far more is required to find a defendant capable of standing trial than the *176 existence of a mere mask of .sanity. Casual surface understanding and superficial ability to assist counsel will not suffice as a predicate for a determination that defendant is sane.
In People ex rel. Bernstein v. McNeill (48 N. Y. S. 2d 764, 766) the court in rejecting an institutionalized defendant’s claim that he was prepared for trial .said, in part: ‘ ‘ Ability to mfke a defense, however, means more than capacity to discuss his case with his attorney, answer questions, and to understand the nature of legal proceedings. If relator is to go to trial, he should be able to discuss with counsel, rationally, the facts relating to his case which are. within his recollection. He should also be able, rationally, to consider the evidence offered against him, to advise with his attorney concerning it, and to make such decisions as may be necessary for him to make during the course of such a trial.” (See, also, People ex rel. Butler v. McNeill, 30 Misc 2d 722, 728; People v. Tripoli, 38 N. Y. S. 2d 288, 289 ; People v. Greene, 203 Misc. 191; Bennett, Competency to Stand Trial: A Call for Reform, 59 J. Crim. L., C. & P. S. 569, 575 [1968].) The word “ understanding ” requires some depth of understanding, not merely surface knowledge of the proceedings.
Moreover, as had been indicated, all four psychiatrists who testified at bar, concurred that there was a possibility that defendant might break down under the strain of a long and arduous trial. They varied in their appraisal of the probability of such breakdown. This court finds as a fact from careful consideration of the testimony of said witnesses that there is not merely possibility of a mental collapse but an impressive probability thereof. It is noted in Competency to Stand Trial: A Call to Reform (59 J. Crim. L., C. & P. S., 569, 574 [1968]) that: “ The defendant must be able to follow the evidence, assist counsel in evaluating the testimony of witnesses, and be able to meet the stresses of a long trial without his rationality or judgment breaking down. ’ ’ And ‘ ‘ In applying the functional test, the mental condition of the defendant must not be evaluated in a vacuum, but must be considered in relation to the circumstances of the case. The anticipated length and complexity of the trial is an important factor. The defendant who would be competent for a one-day trial might well deteriorate under the • stress of a long proceeding.” (p. 577).
For this court to order the trial to proceed and to discount the likelihood of the defendant’s breakdown during the course thereof would be to make today’s trial the equivalent of the ancient ordeals of fire, water and the hot iron. When trial by ordeal was the accepted method of evaluating guilt, a defendant was compelled to risk his health and safety to test his *177 innocence. To expose a defendant to trial, with a snbstanital possibility of a breakdown during the course thereof, and to do so upon the theory that until he breaks down, one cannot know whether he will or not, would be a deplorable and regressive step in a legal system which prides itself on progress and simple humanity. The interests of justice require that when a defendant is put to his trial charged with the most aggravated crime of murder, there should be no substanital doubt as to his current sanity. Commitment of this defendant pursuant to section 662-b of the Code of Criminal Procedure- would be calculated to achieve this result.
This court is of the opinion that the defendant is in such state of idiocy, imbecility or insanity as to be incapable of understanding the charges against him and the proceedings and making his defense. The court will enter an order directing the Department of Correction of the City of New York to hold the defendant temporarily pending the approval or designation of an appropriate institution pursuant to section 662-b of the Code of Criminal Procedure.