Bernard Tomson, J.
Following a psychiatric examination pursuant to CPL 730.30 (subd. 1), two psychiatrists reported to this court that the defendant was competent to stand trial. The defendant exercised his prerogative under CPL 730.30 (subd. 2) and a hearing was held on April 16, 1974. The two psychiatrists from the Nassau County Medical Center who had conducted the examination testified that the defendant was not an “ incapacitated person ” within the meaning of CPL 730.10 (subd. 1). A psychiatrist called by the defendant testified that he found the defendant to be incapacitated.
“ ‘ Incapacitated person ’ means a defendant who as a result of mental disease or defect lacks capacity to understand the *679 proceedings against him or to assist in his own defense. ’ ’ (CPL 730.10, subd. 1.) All three psychiatrists agreed that the defendant is suffering from a mental disease or defect. The area of disagreement centers upon the remainder of the statutory test, namely, the defendant’s “ capacity to understand the proceedings against him or to assist in his own defense. ’ ’ The testimony on these points pointed up the conclusion that the phrases “ understand the proceedings ”and“ assist in his own defense ” were not assigned a common meaning by the psychiatrists.[1]
According to Blackstone, it was the common-law rule that 11 In criminal cases, therefore, idiots and lunatics are not chargeable for their own acts, if committed when under these incapacities ; no, not even for treason itself. Also, if a man in his sound memory commits a capital offense, and before arraignment for it he becomes mad, he ought not to be arraigned for it, because he is not able to plead to it with that advice and caution that he ought. And if, after he has pleaded, the prisoner becomes mad, he shall not be tried; for how can he make his defense? ” (4 Blackstone’s Comm., p. 24 [1st ed.]). The answer to Blackstone’s rhetorical question is, of course, that a madman cannot “ make his defense ” and that was the very task assigned him in the common-law trial by jury. Not until the passage of a statute in 1837 did the defendant charged with a felony win the right to be represented by counsel. (4 Blackstone’s Comm., p. 359 [1st ed.]; Plunkett, A Concise History of the Common Law [2d ed.], p. 386.)
It appears that in the 1840’s, New York cast the common-law rule in statutory form by requiring that “ no insane person can be fried, sentenced to any punishment, or punished for any crime or offense while he continues in that state.” (cited as 2 R.S. 697, § 2, in Freeman v. People, 4 Denio 9, 19). This rephrasing of Blackstone could have been interpreted as an absolute rule barring the trial of any “ insane person ”, but such was not the construction given it. In Freeman v. People (4 Denio 9, 24, 25) the court ruled as follows: “ The statute, before cited, is emphatic that ‘ no insane person can be tried.’ In its terms *680 the prohibition is broad enough to reach every possible state of insanity, so that, if the words be taken literally, no person while laboring under insanity in any form, however partial and limited it may be, can be put upon his trial. But this the legislature could not have intended; for, although a person totally bereft of reason cannot be fit subject for trial or punishment, 'it by no means follows that one whose insanity is limited to some particular, object or conceit, his mind in other respects being free from disease, can justly claim the like exemption. * ■* *
The common law, equally with this statute, forbids the trial of any person in a state of insanity. This is clearly shown by authorities which have been referred to, and which also show the reason for the rule, to wit, the incapacity of one who is insane to make a rational defense. The statute is an affirmance of this common law principle, and ithe reason on which the rule rests furnishes a key to what must have been the intention of the legislature. If, therefore, a person arragiñed for a crime, is capable of understanding the nature and object of the proceedings going on against him, if he rightly comprehends his own condition in reference to such proceedings, and can conduct his defense in a rational manner he is, for the purpose of being tried, to be deemed sane, although on some other subjects his mind may be deranged or unsound.” The court at this early stage in our legal history thus resisted the allurements of a flat rule making sanity rthe sole criterion and opted instead for a functional approach. It was left for the jury to determine whether the defendant possessed sufficient capacity to stand trial. (Freeman v. People, 4 Denio 9, 27.)
Competency to stand trial is a question of law and fact and should not be the subject of a contest between psychiatric experts. (See Wieter v. Settle, 193 F. Supp. 318, 322.) “ The real issue here is the injection by the psychiatrist of his own ethical standards into this value-judgment so as to usurp a function which is not a medical but a legal one. ’ ’ (Cooper, Fitness to Proceed : A Brief Look at Some Aspects of the Medico-Legal Problem Under the New York Criminal Procedure Law, 52 Nebraska L. Rev. 44, 58 and see 54, 61 [1972].) Consequently, from the time of Freeman v. People to the present, New York courts have weighed psychiatric testimony applying legal tests to determine whether defendants were competent ito /stand trial. (E.g., People v. De Francesco, 20 Misc 2d 854; People v. Greene, 203 Misc. 191; see, also, People v. Wolfe, 198 Misc. 695, vacated 199 Misc. 413, revd. 278 App. Div. 967, affd. 303 N Y 752.) “ Competency, in the final analysis, is a legal issue which must be determined by *681 the court with the assistance of the medical expert. It is an abdication by the courts of their prerogatives to blindly follow psychiatric pronouncements which may be based on a partial or total lack of understanding of the issues involved in a determination of legal, not medical, competence for trial.” (Rosenberg, Competency for Trial: A Problem in Interdisciplinary Communication, 53 Judicature 316, 321).
Unquestionably, psychiatric testimony is essential to any intelligent evaluation of a defendant’s capacity to stand trial. The problems posed by its use are traceable more to the imprecision of the legal standard than to any doubts about .the validity of the psychiatric discipline. While variously phrased, the standard for competency at trial has always been a composite of legal and medical concepts. (See CPL 730.10, subd. 1; Dusky v. United States, 362 U. S. 402; People v. Francabandera, 33 N Y 2d 429, 435-436; People ex rel. Malone v. Johnston, 37 A D 2d 585; People ex rel. Fazio v. McNeill, 4 A D 2d 686; People v. Posey, 74 Misc 2d 149; People v. Swallow, 60 Misc 2d 171, 175-177; People ex rel. Bernstein v. McNeill, 48 N. Y. S. 2d 764.) The psychiatrist’s expertise in medical, not legal, despite the invention of “ forensic psychiatry ”.
A psychiatric finding of incompetence to stand trial must be made upon an official form adopted by the Judicial Conference. (CPL 730.10, subd. 9.) The form requires a “ detailed statement of the reasons for [the] opinion by making particular reference to those aspects of the proceeding wherein the defendant lacks capacity to understand or to assist in his own defense.” (CPL 730.10, subd. 9.) It was hoped that the forms would ‘ ‘ furnish a court with meaningful data and * * * promote a uniform administration of the ‘ fitness to proceed ’ standard ” (Commission Staff Comment to CPL 730.10). This hope is not entirely realized. By merely restating the statutory requirements, too much reliance is placed upon the psychiatrist’s knowledge of the nature of legal proceedings and of the defendant’s role in them. (22 NYCRR) Appendix A-7 form DMH 704 [4-72] JC.) The form is of no assistance where the court-ordered psychiatric report finds the defendant competent since the detailed statement is required only where the finding is one of incapacity.[2]
For some time writers have been urging courts to adopt meaningful tests for competency at trial and a functional *682 approach which focuses upon the defendant’s true role in his own defense. (Bacon, Incompetency to Stand Trial: Commitment to an Inclusive Test, 42 So. Cal. L. Rev. 444; Bennett, Competency to Stand Trial: A Call for Reform, 59 J. Crim. L. C. & P. S., 569; Note 81 Harv. L. Rev. 454 [1967].) Such a test would limit psychiatric testimony to the medical sphere by defining the defendant’s role and merely asking of the expert whether the defendant can perform the tasks assigned him. The drafters of the CPL appear to have envisioned such a test when they delegated to the Judicial Conference the responsibility for drawing a psychiatric report form designed to elicit specific information. In People v. Francabandera (33 N Y 2d 429, supra) the Court of Appeals too adopted such an approach by analyzing an amnesiac’s competency for trial in terms of fairness considered in light of the facts and circumstances of the particular ease.
In determining competency there has been a tendency to assign the defendant a key role at trial and to demand of him at times what may be too high a level of performance. (People v. Swallow, 60 Misc 2d 171, supra; People ex rel. Butler v. McNeill, 30 Misc 2d 722; People ex rel. Bernstein v. McNeill, 48 N. Y. S. 2d 764, supra.) Perhaps this is attributable to the broad phrasing of the common-law rule referred to above. Ironically, however, cases which, for reasons of fairness, required a high degree of competence often resulted in the defendant’s indefinite confinement in a mental institution. “ The gravest injustice is inflicted upon a person by criminal law commitment upon a finding of unfitness to proceed when it later turns out that he had not committed any criminal act.” (Silving, Essays on Mental Incapacity and Criminal Conduct,, p. 168 [1967]; see, also, Bacon, Incompetency to Stand Trial: Commitment to an Inclusive Test, 42 So. Cal. L. Rev. 444, 448.)
In defining a defendant’s role at .trial it is important to recall that the common-law test for competency for trial was formulated in an era when a defendant charged with a felony had no right to counsel. Succeeding formulations of the standard evolved before ithe relatively recent growth in the application of the Sixth Amendment. In other contexts, the role given a criminal defendant is a rather narrow one. In Powell v. Alabama (287 U. S. 45, 69) the Supreme Court wrote: “ Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with rules of evidence. Left *683 without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense,,, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.” In its standards relating to the defense function, the American Bar Association’s Project on Standards for Criminal Justice has presented the most thorough analysis to date of the defendant’s role in his own defense. These standards give the defendant the ultimate decision, after full consultation with counsel, as to what plea to enter, whether to waive a jury trial and whether or not to testify in his own behalf. All other strategic and tactical decisions, including what witnesses to call, whether and how to cross-examine, what jurors to excuse and which motions to make are the province of the lawyer after consultation with his client. (American Bar Association’s Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function, part V, p. 233 et seq. [1970].) The American Bar Association approach is summed up in the following analogy (p. 234): “ In medicine, it is the patient’s choice whether to undergo an operation, but no surgeon accepts directions from the patient on medical procedures. In law a comparable distinction must be drawn, since the legal process uses the services of professionally trained lawyers so that judgments can be made on the basis of special skills, insights based on experience and subject to accepted standards of conduct.”
The New York Court of Appeals does not appear to require a high level of competency from criminal defendants for, in People v. Francabandera (33 N Y 2d 429, 435-436, supra) it stated: “ However, we are not prepared to hold that the Legislature had anything in mind in enacting this provision (CPL 730.10, subd. 1) other than the situation where the defendant, because of a current inability to comprehend, or at least a severe impairment to that existing mental state, cannot with a modicum of intelligence assist counsel.” (Emphasis supplied.)
In view of-thése definitions of the role of a defendant, a functional approach to the question of competence would require the court to address itself to the following: (See Wieter v. Settle, 193 F. Supp. 318, 321-322, supra-, Special Committee on the Study of Commitment Procedures and the Law Relating to *684 Incompetents of the Association of the Bar of the City of New York in co-operation with Fordham University School of Law, Mental Illness, Due Process and the Criminal Defendant, [1968], pp. 81-82.)
(1) Is the defendant oriented as to time and place ? (“ [T]he defendant must have a minimal contact with reality. This encompasses the basic human functions that are automatic to all but the seriously mentally ill. An accused must appreciate his presence in relation to time, place and things. ’ ’ Bennett, Competency to Stand Trial: A Call for Reform, 59 J. Crim. L. C. & P. S. 569, 574-575, supra.)
(2) Can the defendant perceive, recall and relate? These abilities should be familiar as three of the four necessary qualifications of witnesses. (Bacon, Incompetency to Stand Trial: Commitment to an Inclusive Test, 42 So. Cal. L. Rev. 444, 450, supra.) Recollection is used not as pertaining to the events underlying the charge, a question covered in People v. Francabandera (supra) but in the more basic sense of the ability to recall sensory perceptions from one moment to the next.
(3) Does the defendant have at least a rudimentary understanding of the process of trial and the roles of the Judge, jury, prosecutor and defense attorney? (See People v. Posey, 74 Misc 2d 149, supra.)
(4) Can the defendant, if he wishes, establish a working relationship with his attorney? (“If the accused is so delusional or paranoid that he will not trust the counsel or tell him the true facts, then he would be incompetent.” Bennett, supra, p. 574, and see People v. Francabandera, 33 N Y 2d 429, 435-436, supra.)
(5) Does the defendant possess sufficient intelligence and judgment to listen to the advice of counsel and, based on that advice, appreciate (without necessarily choosing to adopt it) that one course of conduct may be more beneficial to him than another? (Bacon, supra, p. 446; Bennett, supra, p. 575.)
(6) Is the defendnt’s mental state sufficiently stable to enable him to withstand the stresses of the trial without suffering a serious, prolonged or permanent breakdown? Will the trial be long, complex, short or simple ? (See People v. Swallow, 60 Misc 2d 171, 175-177, supra.) Are adjustments required in the manner of trial rather than a finding of incapacity? (See Matter of Russell, 126 Vt. 240.)
In a given case one or more of these questions may not be susceptible to a definitive answer. They are intended to point up factors to be considered and do not suggest a mechanical test. The central issue remains whether on all the facts and cir *685 cumstances of a particular case the determination as to ‘ ‘ capacity ” is compatible with fundamental fairness.
Here, the testimony of the People’s experts together with the court’s own observations of the defendant during the course of the hearing indicate that he is competent to stand trial. Moreover, during the hearing the defendant demonstrated more than a rudimentary grasp of the proceedings and an appreciation of his own best interests. While the testimony of the defense psychiatrist was exact insofar as it presented a detailed analysis of the defendant’s mental illness, it failed to come to grips with his ability to fulfill his role at trial.
A consideration of the applicable criteria listed above simplifies the determination here. The defendant: (1) is oriented as to time and place, (2) is able to perceive, recall and relate, (3) does have an understanding of the process of trial and the roles of the Judge, jury, prosecutor and defense attorney, (4) can establish a working relationship with his attorney, (5) has sufficient intelligence and judgment to listen to the advice of counsel and, based on that advice, appreciate (without necessarily choosing to adopt it) that one course of conduct may be more beneficial to him than another, and (6) is sufficiently stable to enable him to withstand the stresses of the trial without suffering a serious, prolonged or permanent breakdown.
The People have established the burden imposed on it, that by a preponderance of the evidence (People v. Santos, 43 A D 2d 73) the defendant has been shown not to be an incapacitated person within the meaning of CPL 730.10 (subd. 1).

. "It is obvious, therefore, that the test of competence is sufficiently broad to permit the trial of a psychotic defendant when no unfairness will result, and also to forbid the trial of a defendant who is not psychotic because severe depression or emotional stress would prevent his full participation in defending himself. That there is occasional confusion as to the meaning and application of the criteria, particularly among those psychiatrists not regularly concerned with this issue, is a fact within the individual professional experiences of the committee’s members, but that regrettable fact is understandable.” (Mental Illness, Due Process and the Criminal Defendant [1968], p. 82).

. It must be stated, however, that in Nassau County the psychiatrists’ report ordinarily contains a detailed statement and analysis )though the finding is one of “ capacity ”.