**UNITED STATES of America ex rel. Robert A. BORNHOLDT, Petitioner,**

v.

**Vito TERNULLO, Superintendent, Fishkill Correctional Facility, Respondent.**

No. 74 Civ. 3874–LFM.

United States District Court, S. D. New York.

Oct. 10, 1975.

17. 1 CCH Energy Management ¶ 9710, at 9742–43.

Robert A. Bornholdt, petitioner pro se.

Richard H. Kuh, Dist. Atty., New York County, for respondent; Judith K. Rubinstein, Asst. Dist. Atty., of counsel.

## MEMORANDUM

MacMAHON, District Judge.

Petitioner, confined in Matteawan State Hospital, Beacon, N. Y., seeks post-conviction relief, invoking 28 U.S.C. § 2254 and challenging the constitutionality of his conviction and confinement under the Sixth and Fourteenth Amendments.

Petitioner was convicted in Supreme Court, New York County, on May 26, 1970 of murdering a New York City police officer and was sentenced to twenty-five years to life. The sentencing court recommended that he never be considered for parole. Petitioner contends that he was incompetent to stand trial because he was under the influence of the drug Prolixin, a tranquilizer, during selection of the jury and that, although he raised the defense of insanity, the prosecutor failed to prove his sanity at the time of the alleged crime beyond a reasonable doubt.

We note at the outset that petitioner appealed his conviction and it was unanimously affirmed without opinion by the Appellate Division. *People v. Bornholdt,* 39 A.D.2d 839, 332 N.Y.S.2d 1013 (1972), and by the New York Court of Appeals, 33 N.Y.2d 75, 89, 350 N.Y.S.2d 369, 305 N.E.2d 461 (1973). The appellate briefs and opinions show that the same issues now raised were previously

raised in the state courts on direct appeal. Petitioner has thus exhausted his state court remedies.[1]

We now consider petitioner's first claim that he was incompetent to stand trial because tranquilizing drugs made him unable to cooperate with his attorney during selection of the jury.

It appears that petitioner was remanded during January and February 1970 to Bellevue Psychiatric Hospital for an examination as to his competency to stand trial. Jury selection began on March 2, 1970, with petitioner present.

In the latter part of March 1970, after jury selection but before opening statements, the court held an evidentiary hearing following receipt of the Bellevue psychiatric report attesting to petitioner's competency. There, Dr. Stanley Portnow, then Chief of Forensic Psychiatry at Bellevue, testified that petitioner was a remissive schizophrenic. The doctor found that petitioner had no trouble communicating for he was able to confer with him and other ward personnel. The doctor also found that petitioner understood the nature of the charges against him, since he displayed a knowledge of them in his discussions with the doctor, but was unwilling to state details.

The doctor further testified that Prolixin, a heavy tranquilizing drug, was prescribed to counteract petitioner's extreme agitation and anxiety. This drug and a companion, Artane, also administered to petitioner, caused side effects, such as excessive salivation, tremors of the hands, a mask-like facial appearance, and a shuffling gait. The doctor emphasized, however, that these drugs had no effect on petitioner's memory or cognitive faculties.

The only defense witness upon the hearing was petitioner's attorney. He testified that he found petitioner's concentration somewhat impaired during jury selection due to petitioner's preoccupation with his physical symptoms. The attorney conceded, however, that petitioner's condition had markedly improved by the end of the jury selection.

It appears that, although petitioner was examined by two defense psychiatrists, neither of them testified at the hearing, and, indeed, nothing in their later trial testimony gives the slightest inkling that petitioner was incompetent to stand trial.

The trial judge recognized that petitioner suffered discomfort from the side effects of the tranquilizing medication, but found nothing to indicate that petitioner could not comprehend the nature of the charges and cooperate with his attorney.

■ The test of competency to stand trial is concerned not so much with whether a defendant is afflicted with mental illness, *per se*, but with whether he possesses "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding— and whether he has a rational as well as factual understanding of the proceedings against him." [2]

While it is universally recognized that a person, who lacks capacity to understand the nature of the charges against him, to consult with counsel, and to assist in the preparation of his defense, is not competent to stand trial,[3] most courts considering the issue have been concerned more with consideration of what indicia of evidence mandates a hearing than with what quantum of

---

1. 28 U.S.C. § 2254(b); *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); *United States ex rel. Nelson v. Zelker*, 465 F.2d 1121 (2d Cir.), *cert. denied*, 409 U.S. 1045, 93 S.Ct. 544, 34 L.Ed.2d 497 (1972).

2. *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

3. Note, Incompetency to Stand Trial, 81 Harv.L.Rev. 454 (1967).

proof is required to sustain a finding of competency.[4] In jurisdictions where the latter issue has been precisely considered, it appears to be the settled rule that the burden rests with the prosecution to demonstrate competency by a preponderance of the evidence.[5] Here, the trial court found that the prosecution met that burden.

■ Factual findings by state trial courts, after hearings complying with constitutional standards, as is the case here, should be considered presumptively correct by the federal courts exercising habeas jurisdiction and should not be set aside except upon findings that they are clearly erroneous.[6]

■ We cannot say that the trial court's finding that petitioner was competent to stand trial was clearly erroneous. Rather, we think it was overwhelmingly supported by the evidence.

Six psychiatric reports were presented to the court prior to the hearing. The court heard the testimony of the Chief of Forensic Psychiatry at Bellevue, who had examined petitioner regularly over a period of one month. All of the reports and testimony indicated without contradiction that, while the medication may have had some discomforting physical effects upon petitioner, it did not affect or impair his cognitive faculties.[7]

Significantly, petitioner's attorney, fully aware of petitioner's physical discomfort, did not even object to commencement of the trial, much less seek a continuance or adjournment of the trial or even the jury selection. Nor did he move for a mistrial at any time. Moreover, whenever he did request a short recess to confer with his client, the request was invariably granted. Finally, he did not call as witnesses at the competency hearing the two defense psychiatrists who had examined petitioner. We think this justifies an inference that their testimony would not have been favorable to the defense.

■ Petitioner seeks to bolster his contention that he was incompetent to stand trial by a belated argument that his commitment to Dannemora State Hospital twelve days after he was sentenced shows that he was incompetent during trial. While this might support an inference [8] that he may have been mentally ill during trial, a fact conceded there by Dr. Portnow, it does not constitute a showing that his mental illness in any way affected his cognitive faculties at trial, and Dr. Portnow testified that it did not.

It is clear, therefore, that the trial court was not clearly erroneous in its determination of petitioner's competency. Petitioner's application on this ground must therefore be rejected.

Finally, petitioner contends that, although he raised the defense of insanity upon the trial, the prosecution failed to prove beyond a reasonable doubt that he was sane at the time of the alleged crime.

■ Two qualified psychiatrists testified in support of petitioner's insanity defense. The prosecution presented one rebuttal witness, a qualified psychiatrist

---

4. *Drope v. Missouri, supra; Pate v. Robinson, supra; United States ex rel. Curtis v. Zelker,* 466 F.2d 1092 (2d Cir. 1972), *cert. denied,* 410 U.S. 945, 93 S.Ct. 1405, 35 L. Ed.2d 612 (1973).

5. Compare *People v. Santos,* 43 App.Div.2d 73, 349 N.Y.S.2d 439 (1973) with *People v. Swallow,* 60 Misc.2d 171, 301 N.Y.S.2d 798 (1969); cf. *United States v. Marbley,* 410 F.2d 294 (5th Cir. 1969); see *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L. Ed.2d 618 (1972).

6. 28 U.S.C. § 2254(d); *LaVallee v. Rose,* 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973); *United States ex rel. Williams v. LaVallee,* 487 F.2d 1006, 1010 (2d Cir. 1973), *cert. denied,* 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974).

7. See Buschman and Reed, Tranquilizers and Competency to Stand Trial, 54 A.B.A.J. 284 (1968).

8. In all probability, petitioner was not sentenced until several weeks after his trial.

present in court throughout the trial, who observed petitioner, reviewed his medical records, but never actually examined petitioner. Petitioner claims that he was denied due process since the prosecution employed a psychiatrist who never actually examined him. Such a claim is meritless.

 It is indeed true that, once the presumption of sanity is thrown into question by the defense's affirmative presentation of a colorable insanity defense, the prosecution must thereupon introduce some rebuttal testimony in order to present a properly contested issue of fact for the jury to resolve. The method and mode of the examination conducted by the prosecution's witnesses on rebuttal may affect its weight to be determined by the jury, but clearly has no bearing on its ultimate admissability.[9] In the instant case, the so-called "battle of the experts" was fairly posed to the jury and thereupon became a question of fact for them to resolve.[10]

■ Moreover, the habeas jurisdiction of the federal courts is severely circumscribed with regard to evaluation of sufficiency of evidence or affirmative defenses as a matter of state law.[11] Despite the fact that the federal and state rules with regard to insanity defenses differ in New York,[12] such a rule is a matter of state law, not of federal constitutional magnitude. Thus, this court may not intercede unless there is a showing of no evidence whatsoever upon which the jury made its findings. Such is clearly not the case here.[13]

Accordingly, the within application is denied in all respects and dismissed. A

certificate of probable cause[14] will not issue since there are no questions of substance on which the Court of Appeals should rule. Finally, we certify that any purported appeal from this order in *forma pauperis* is not taken in good faith because an appeal would be frivolous.[15]

So ordered.

---

9. Note, Burden of Persuasion and Presumption of Sanity in New York Law, 26 Syracuse L.Rev. 709 (1975).

10. See Simon, The Jury and the Insanity Defense (1967) (Univ. Chicago Jury Study).

11. *United States ex rel. Cataliotti v. Mancusi*, 309 F.Supp. 1182 (S.D.N.Y.1970).

12. Compare *United States v. Freeman*, 357 F.2d 606 (2d Cir. 1966) with *People v. Horton*, 308 N.Y. 1, 123 N.E.2d 609 (1955).

13. *United States ex rel. Terry v. Henderson*, 462 F.2d 1125 (2d Cir. 1972).

14. 28 U.S.C. § 2253.

15. 28 U.S.C. § 1915(a); *Coppedge v. United States*, 369 U.S. 438, 445, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962); *United States v. Visconti*, 261 F.2d 215, 218 (2d Cir. 1958), *cert. denied*, 359 U.S. 954, 79 S.Ct. 743, 3 L.Ed.2d 762 (1959).