(May 23, 1991)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v

JOHN C. MORTON, Appellant.—Harvey, J. Appeal from a judgment of the County Court of Rensselaer County (Dwyer, Jr., J.), rendered May 11, 1987, upon a verdict convicting defendant of the crime of murder in the second degree.

At approximately 4:20 P.M. on June 5, 1985, defendant's adoptive father entered the door and followed a trail of blood to the bottom of the cellar stairs where he discovered the lifeless body of his wife, Lucy Morton, defendant's adoptive mother, in their home in the Town of Schodack, Rensselaer County. Just prior to discovering the body, defendant's father observed defendant leaving the residence in his automobile. Upon determining that his wife was dead, defendant's father telephoned the State Police and told them that he believed defendant had just murdered his mother. A short time later, defendant was apprehended based on the description his father gave to the police. Defendant was found to be in possession of a revolver, dagger and butterfly knife. Defendant was subsequently charged in a two-count indictment with second degree murder in violation of Penal Law § 125.25 (1) and (2).

Prior to trial, defense counsel requested and was granted a psychiatric evaluation of defendant pursuant to CPL 730.30. Defendant, who apparently had an extensive psychiatric history, was evaluated by two psychiatrists in July 1985, Bernardo Gaviria and Jeffrey De Lisle, who determined that defendant was acutely psychotic and was not competent to stand trial at that time. Defendant was committed to a psychiatric center until March 1986, when the director of that facility determined that defendant was no longer an incapacitated person. Defendant retained new trial counsel in January 1987 and a second competency evaluation was ordered soon thereafter. Following evaluation by Gaviria and Jose Alarcon, both psychiatrists determined that, notwithstanding defendant's continuing mental disorder, he was now competent to stand trial. A competency hearing was then conducted, at the conclusion of which County Court found defendant competent to stand trial and ordered the impaneling of the jury.

At trial, defendant refused his counsel's advice to plead an insanity defense and instead insisted upon a self-defense theory. Defendant, who was 5 feet, 11 inches tall and weighed approximately 140 pounds in June 1985, testified at trial that his 66-year-old mother (who was described as 5 feet, 3 inches tall, 110 pounds and frail) frequently became violent toward him and had purportedly learned a "devine oriental assassin dance", which involved spinning around in a violent yet graceful manner while striking him with her knuckles, elbows

and knees. Other times he claimed that she beat him with vacuum cleaner attachments.

Defendant testified that, on the day of his mother's death, she became hostile toward him and attempted to drown him in the toilet bowl. She then allegedly tried to shoot defendant with one of his two guns. When he allegedly could not wrestle the gun away from his mother, defendant then stabbed her seven times with a knife he carried in his belt and then brutally struck the back of her head approximately 12 times with the second revolver he carried in his waistband. After determining she was dead, defendant then inartfully attempted to hide the body and fled the house with his stash of "emergency money", purportedly to go hire a lawyer. The jury ultimately convicted defendant of the second count of the indictment (depraved-mind murder), and he was later sentenced to an indeterminate prison term of 25 years to life. This appeal followed.

Initially, we reject defendant's principal contention that County Court erred in determining that he was competent to stand trial following his competency hearing in March 1987. In determining whether a particular defendant is competent to stand trial, the relevant inquiry is whether the defendant " 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him' " (People v Arnold, 113 AD2d 101, 102, quoting Dusky v United States, 362 US 402). Although the ultimate determination of competency lies with the court, psychiatric testimony is to be accorded great weight (see, People v Orama, 150 AD2d 505, 506, lv denied 74 NY2d 744; People v Bolling, 114 AD2d 416, 417). To that end, the hearing court should consider, among other things, whether a defendant: "(1) is oriented as to time and place; (2) is able to perceive, recall and relate; (3) has an understanding of the process of the trial and the roles of Judge, jury, prosecutor and defense attorney; (4) can establish a working relationship with his attorney; (5) has sufficient intelligence and judgment to listen to the advice of counsel and, based on that advice, appreciate (without necessarily adopting) the fact that one course of conduct may be more beneficial to him than another; and (6) is sufficiently stable to enable him to withstand the stresses of the trial without suffering a serious prolonged or permanent breakdown" (People v Picozzi, 106 AD2d 413, 414, citing People v Valentino, 78 Misc 2d 678, 679-680).

Here, it is clear that all of these and other factors were

satisfactorily explored at the hearing, and the People adequately met their burden of establishing defendant's competency by a fair preponderance of the credible evidence *(see, People v Orama,* 150 AD2d 505, 506, *supra; People v Allen,* 135 AD2d 823; *People v Breeden,* 115 AD2d 484). The two psychiatrists who testified at the hearing opined that, while defendant was apparently suffering an acute psychotic episode at the time of his original psychiatric examination, those symptoms had subsided by the time of his second series of examinations and he did not display the signs of one who had a chronic psychosis. The physicians both explained that defendant seemed reasonably oriented and, in fact, had discussed at length the judicial process he was undergoing, the roles of the attorneys, Judge and jury, and the nature of the crimes with which he was charged. Although both psychiatrists made it clear that defendant continued to show signs of a mental disorder and that a relapse was possible, they also stated that a relapse was unlikely. County Court seemed satisfied upon being assured that if a relapse did occur, it would be objectively observable to a layperson.

We find no reason on this record to disagree with County Court's perception in this matter *(see, People v Bolling,* 114 AD2d 416, 417, *supra).* While defendant goes to great lengths to point out that County Court made a few remarks at trial which seemed to imply that the court let the opinions of the psychiatrists unduly sway its judgment, a fuller examination of the conversations reveals that the more likely explanation of the court's statement was that the court was simply venting its frustration at defendant's stubborn unwillingness, in the face of certain conviction, to pursue any defense at trial other than that of self-defense. However, the mere fact that a defendant disagrees with counsel's trial strategy does not automatically render him incompetent *(see, People v Allen,* 135 AD2d 823, *supra; People v Picozzi,* 106 AD2d 413, 414, *supra)* and because the court's finding of competency was amply supported by the hearing evidence, we find no basis to disturb that finding.

Turning to the merits of defendant's appeal, we find little reason for a lengthy discussion of the issues raised. Inasmuch as no reasonable view of the evidence adduced at trial would support the affirmative defense of extreme emotional disturbance, we find no error in County Court's refusal to so charge the jury *(see, People v Hildreth,* 148 AD2d 879, 881-882, *lv denied* 73 NY2d 1016). Although defendant argues that he received ineffective assistance of counsel, the record reveals

that counsel performed admirably considering the constraints put upon him by defendant's adamant refusal to allow him to assert a defense that defendant was not responsible by reason of mental disease or defect *(see,* Penal Law § 40.15). Defendant was fully informed of the consequences of his decision to abandon an insanity defense and pursue a self-defense strategy. A review of the colloquy between defendant and County Court indicates that defendant understood the advice offered to him and, as was his right, simply declined to follow it. That being the case, counsel had no authority to pursue any defense other than the one authorized by defendant *(see, People v MacDowell,* 133 Misc 2d 944, 946).

The remaining issues have been examined and have been found to be without merit.

Judgment affirmed. Weiss, J. P., Levine, Mercure and Harvey, JJ., concur.

Yesawich, Jr., J., dissents and votes to reverse in a memorandum. Yesawich, Jr., J. (dissenting). I respectfully dissent.

As noted by the majority, a court deciding whether a defendant is competent to stand trial must weigh a variety of factors *(see generally, People v Picozzi,* 106 AD2d 413, 414), no one of which is determinative. Psychiatric evaluations brought before the court unquestionably must be taken into account. Blind obeisance by the hearing court to psychiatrists' pronouncements, however, is inappropriate *(see, People v Grisset,* 118 Misc 2d 450, 453; *People v Valentino,* 78 Misc 2d 678, 680-681) for the issue of a defendant's capacity to stand trial is, in the final analysis, a legal one to be determined by the court (CPL 730.30 [2]; *People v Valentino, supra; see, People v Bolling,* 114 AD2d 416, 417). It being the province and duty of the court to decide if a defendant is competent, the court's own observations of the defendant should be considered, not ignored.

Review of the competency hearing and trial transcript in this case makes it clear that County Court abdicated its role in making the competency determination. Immediately following the hearing, the court declared that "we have two accredited psychiatrists * * * [who] both say * * * that Defendant is competent to proceed to trial. Therefore, I have no alternative but to order the impaneling of a jury." Later, during the trial, County Court indicated that it believed that the psychiatrists "should have said [defendant] wasn't even competent to stand trial but they did and they are board certified psychiatrists" and that "we all think that the original diagnosis [of incompe-

tency] made by these physicians was correct". Further, in the course of denying counsel's request for a charge on the defense of extreme emotional disturbance, County Court stated: "The only reasonable view of the evidence would have to be based upon the testimony and the conduct of the defendant on the witness stand and throughout the trial which indicates not a *[sic]* extreme emotional disturbance, *but an inability, in my opinion, to make his own defense,* and I didn't agree with the psychiatrist *[sic]* in the first place, but they are board-certified psychiatrists, and that issue is closed" (emphasis supplied).

Given County Court's unambiguous avowal that it believed defendant incompetent but proceeded with the trial nonetheless and failed to order a second hearing after it determined that defendant, who concededly suffered from a mental disorder, was unable to make his own defense (CPL 730.30 [1]; *see, People v Arnold,* 113 AD2d 101, 103; *compare, People v Kestin,* 134 AD2d 453, *lv dismissed* 73 NY2d 923), I am persuaded that this matter should be remitted for a hearing, to be held before another Judge, on the issue of defendant's mental capacity at the time of trial, and, if a determination favorable to the People is made, the judgment of conviction should be affirmed *(see, People v Hudson,* 19 NY2d 137, 140, *cert denied* 398 US 944).