Jones, J.
We conclude on the basis of this record that this defendant was incompetent to stand trial as a matter of law.
Over a period of three years preceding the trial in September, 1971, there were alternate conclusions of record — three judicial determinations that defendant was incapable of standing trial (on September 18, 1968, October 3, 1969, and October 29, 1970); three expressions of opinion by representatives of the State hospitals that he could stand trial (on April 24, 1969, May 19, 1970, and June 3, 1971); and two judicial determinations that defendant could stand trial (on August 12, 1970 and finally on August 10,1971).
The 1968 determination was based on the opinion of defendant’s own examining psychiatrist, Dr. Bergman, that defendant was “ a mental retardate with a deep personality disorder ”. Examination by two other doctors, Dr. Serkin and Dr. Libertson, resulted in a report dated July 9, 1968, in which defendant was found to be suffering from “ an obvious mental deficiency ” and their conclusion was that ‘ ‘ because of his mental deficiency the defendant does not understand the charge against him and cannot assist and cooperate in his defense ”. Defendant was then committed to Matteawan State Hospital.
In April, 1969 Matteawan informed the court that it was “ felt ” that defendant was fit to proceed and he was returned to Wayne County for trial.
Defendant was re-examined by Dr. Bergman who reported that his condition was unchanged and unchangeable. On court-ordered re-examination Drs. Serkin and Libertson reported that since their 1968 examination defendant had acquired certain rote knowledge but was still unfit for trial “ because of *579 his mental deficiency Defendant was thereupon committed for the second time in October, 1969.
Repeating the pattern the Matteawan authorities advised the court in May of 1970 that ££ it was felt ” that defendant was fit for trial.
Defendant’s third commitment began, predictably, with the report of his own psychiatrist, Dr. Bergman, that he was still incapable of standing trial. A court-ordered examination was then conducted by Dr. Serkin and by a psychiatrist new to the case, Dr. Giminez. On July 21,1970 they reported that defendant ‘1 was mentally retarded, classifying as a borderline mental defective ”. For purposes of a more complete evaluation these two doctors had defendant examined by the psychologist at the Wayne County Mental Health Clinic, who concluded that, <£ it is very possible that, through concrete examples, fairly complex material could be taught him ”. The two doctors then concluded, £ £ It would seem, therefore, that since this man has been shuttled back and forth between Wayne County and Beacon, (although strictly speaking he should not stand trial * * *), the best way to handle the present problem is to let him partake in his defense, with the proviso that his appearance in court be explained to him in the simplest, concrete manner. We trust the above will help settle this complex case.”
At a hearing six days later on July 27 Dr. Serkin modified his testimony somewhat. He concluded that defendant’s mental condition had ££ changed to a degree ”. Defendant still could understand the indictment ££ only in the most general way. * * * If his attorney put everything in a simple, basic way, he could understand * * * Whether he would have a full understanding is another story * * * much would be over his head.” When pressed with the ultimate question as to whether defendant could stand trial Dr. Sirkin was equivocal. He said, ££ I think I would have to say no because of his limited intellect. Of course that is a qualified no because there are some things he could help in.” Dr. Giminez in effect confirmed the opinions of his professional colleague. The court reserved decision. On August 12 without further testimony, the court found defendant capable of standing trial.
During following court appearances defendant’s conduct led to agreement that the competency hearing should be reopened. *580 This time, on October 16, 1970, the examining doctors, again Drs. SerMn and Bergman, concluded that defendant was no longer capable of standing trial. Querried as to the change from the opinion expressed in July, Dr. Serlrin responded, “ I think I can properly say that we stretched a point and felt that in order to keep^him from being sent back and forth to Beacon for the rest of Ms days, it would be wise in a careful or guarded manner to have him participate in his defense, that he could if everything was put simply to him, that he could understand it and maybe therefore participate.”
The court found defendant incapacitated and recommitted him to Beacon State Facility where he remained until June of 1971 when for the third time the court was informed that “ it was felt ’ ’ by the authorities there that defendant could proceed to trial.
On defendant’s return to Wayne County defense counsel moved to have his mental condition re-evaluated, and Drs. Serkin and Libertson were appointed again. With reservations they nevertheless concluded that “ it is possible that this man could stand trial, if he were to cooperate with Ms defense counsel, and if procedures were kept simple. However, one cannot be sure how he would react to the pressures of a trial. If his counsel finds that he can talk reasonably with Mr. Jordan, then it might be worth going on with his defense. If his counsel finds that he cannot assist in his defense properly (from the attorney’s standpoint), Mr. Jordan should be reconfined to a mental institution.”
A final competency hearing was held on August 6, 1971. Dr. SerMn then testified, “ This time he did in spite of his anger, he did relate well enough to give us the idea that he knew what was going on and if he did cooperate with his attorney might be able to satisfactorily partake in his defense.” He admitted that defendant might not co-operate with his attorney but in his opinion defendant could make a choice. Dr. Serkin admitted that he was still concerned over the fact that defendant was being transferred back and forth. “ I think this has been in my thinMng. I think that I have probably leaned as far as I could and still stay within the limits of truth and honesty and so on. I think I have leaned further because I have known that he has been as you say ‘ yo-yoed ’ back and forth.” Dr. Libert *581 son agreed that defendant was capable of standing trial, but admitted that he might not co-operate with his attorney. He testified that he found a marked improvement since the examinations he had made in 1968 and 1969. A determination of defendant’s competence to stand trial was made on August 10, 1971.
Defendant’s trial began on September 22, 1971 and ended on September 28,1971 with the verdict of guilty of murder.
We interpret this record as disclosing continuing and essentially undeviating testimony of defendant’s serious mental incapacity. Dr. Serkin’s testimony in August, 1971 in support of the proposition that defendant was then competent to stand trial was admittedly based on his desire to terminate defendant’s being “ yo-yoed ” between court and confinement — clearly an unacceptable formulation of capability to stand trial. Both Drs. Serkin and Libertson recognized the possibility of defendant’s non-co-operation with his counsel in which event it would be necessary to “ modify the Courtroom techniques then to accommodate this explosive characteristic ”. In one view Dr. Libertson’s final testimony could be said to provide a basis for the conclusion reached by the court. In our view, however, on the whole record in this case, the proof falls short as a matter of law, of meeting the requirement that defendant be able to comprehend his predicament and be capable of participating rationally in his own defense (CPL 730.10; cf. People v. Laudati, 35 N Y 2d 696).
On oral argument we were informed that defendant was at that time committed to Matteawan State Hospital.
The order of the Appellate Division should accordingly be reversed, defendant’s conviction vacated and the case remitted to County Court, Wayne County, for further proceedings on the indictment at such time as defendant in consequence of a de novo hearing is determined to be capable of standing trial.