Joseph D. Quinn, Jr., J.
The vexing question posed by this inquiry, conducted pursuant to the provisions of CPL 730.30 to *501 determine defendant’s competency to stand trial, is whether, in a case where the examination reports submitted to the court show that each of the two designated psychiatrists were of the opinion that defendant is not an incapacitated person, but where the testimony given by these experts at the capacity hearing which followed demonstrate that their views on this subject were in fact conflicting, the terms of the second subdivision of that statutory section deprive the court of the discretionary power to arrive at a conclusion, based upon the psychiatrists’ reports, their testimony and other available evidence, that defendant is unfit to be tried.
Defendant has been indicted on various charges including second degree kidnapping, second degree assault, unlawful imprisonment in the first degree, misdemeanor possession of a weapon and unauthorized use of a vehicle. The victim of these alleged offenses, which are said to have been committed on December 31, 1973, was defendant’s then estranged and since divorced wife. It is claimed, although not formally charged, that, in the course of the commission of these crimes, defendant twice forced his victim into engaging in fellatio with him.
Shortly after arraignment on these charges, defendant’s former attorney asserted an insanity defense in his behalf. While out on bail on the charges specified in the indictment, defendant was accused of menacing on the complaint of his mother and arrested and arraigned in one of the local courts and remanded when he was unable to post the required bail.
Over a period of several months after being arraigned on the indictment and the local court charge, defendant underwent court ordered competency examinations on several occasions. During this time, defendant also applied pro se to relieve the Legal Aid Society of Westchester County, which first represented him, and for leave to conduct his own defense. Notwithstanding the fact that some of the psychiatric reports submitted described defendant variously as being actively delusional, exhibiting a marked paranoid ideation, suffering from schizophrenia of a chronic paranoid type, being preoccupied with fearing persecution because of his inventions in the areas of perpetual motion and space atomic rocket weaponry, and being so disorganized as to be unable to communicate in his own defense, and in spite of the fact that one such report stated that he had a history of past psychiatric hospitalizations and that he had evidenced active psychotic behavior in the county jail, defendant was, on at least two *502 occasions, found capable of standing trial after no more than pro forma hearings in the County Court. Moreover, he was given leave to conduct his own defense with the assistance of his present counsel who was assigned by County Court to advise him.
After the case was transferred up to Supreme Court, defendant sought leave to plead guilty to the entire indictment here, over the protest of his appointed legal advisor, who called attention to the fact that defendant had a prior felony conviction and faced mandatory imprisonment as a predicate felony offender, if convicted of any of the three felony counts in the indictment.
At this juncture, this court revoked defendant’s bail, granted counsel’s application for appointment of an independent psychiatrist, terminated defendant’s pro se status, assigned advising counsel to defend and ordered that defendant be examined anew under article 730.
Defendant was re-examined, and the two psychiatrists who then saw him submitted examination reports opining that he was capable of standing trial.
In an addendum to his form report, one of these examiners, Dr. Jack Cooper, after noting that defendant "[w]as in Grasslands Hospital in 1971 and was transferred to the Stony Lodge hospital where he stayed over one year receiving Electric and Insulin shock treatment along with drugs”, found defendant to be oriented as to time, person and place and free of gross memory defect. Dr. Cooper stated that defendant "denied delusion and or halucination” and said that defendant "[d]id describe in detail his 'invention’ which is based on the perpetual motion 'principle’ ”. This psychiatrist concluded that defendant was, at the time of the examination, able to co-operate with his attorney in his defense.
The form report submitted by the other psychiatrist, Dr. David Bruce Robbins, concludes with a finding of capacity on defendant’s part. An attachment to the form adds the observation that "[t]his patient knows the charges against him and technically should be able to assist in his defense. However, his deportment in court has been marked by emotional outbursts. He appears to be a paranoid schizophrenic with active referential ideas and should be in treatment, including appropriate medication. Further delay in legal proceedings should be avoided, as an indefinite stay in jail creates high levels of frustration and rage in this patient.”
*503 Called as a witness by the People, Dr. Cooper testified at the hearing, and, after a good deal of hedging, adhered to his original opinion that defendant was fit to proceed. This witness did state on the stand that defendant was in need of psychiatric treatment.
The People also called the second examiner, Dr. Robbins, to testify at the hearing before this court. Under interrogation by the prosecutor, defense counsel and this court, this witness recanted and concluded that defendant lacked the competency to stand trial.
Dr. David Hays, the independent psychiatrist previously appointed by the court to assist the defense, was called to testify at the hearing in defendant’s behalf. The gist of the testimony of this witness was that examination and observation of defendant revealed him to be actively paranoid, incapable of standing trial and suffering from severe and permanent mental disorder which requires hospitalization.
The defense also called Dr. Leo Schneller to testify at the hearing. This witness, who is the Assistant Director of the Psychiatric Division of the Westchester County Medical Center at Grasslands Hospital, who had examined defendant several months earlier under a previous 730 order and first found him incompetent to proceed and then later fit to do so, and who had seen defendant frequently during the interim period, forthrightly testified that this prior opinion of competency was erroneous and that defendant did not have the requisite mental capacity to be tried. This witness, incidentally, voluntarily contacted both the prosecutor and defense counsel when he learned that there was to be a new hearing in this case. Expressing concern with previous findings; of competency, he requested permission to come in and to give testimony contradicting those findings.
During the course of the hearing, defendant interrupted constantly, voicing the opinion that the proceeding was no more than another form of the "psychological torture” to which he had been subjected since his arrest and during his incarceration. On more than one occasion, he contended that the charges which had been lodged against him represented nothing more than an attempt on the part of certain persons and groups, including "the oil companies”, to frustrate his efforts to obtain a patent on a perpetual motion machine. More than once, he asked the court to direct the jail authori *504 ties to allow representatives of the F. B. I. and the Secret Service to visit him and to come to his aid.
On the basis of the proof adduced at the hearing, which resulted in a transcript of some 381 pages, this court is convinced that the People have failed to sustain their burden of establishing defendant’s competency to stand trial by a preponderance of the evidence. (Cf. People v Santos, 43 AD2d 73, 75-76; People v Reason, 44 AD2d 533, 534.)
Were it not for the troublesome procedural problem caused by the language of CPL 730.30 (subd 2) the court would, without more, adjudicate defendant an incapacitated person and commit him to the custody of the State Commissioner of Mental Hygiene.
This subdivision effectively provides that, in an instance when the examination reports submitted to the court show that the psychiatric examiners are unanimous in their opinion that the defendant is not an incapacitated person, and when, following a hearing on the issue of capacity, the court is not satisfied that defendant is competent to proceed, "it must issue a further order of examination directing that the defendant be examined by different psychiatric examiners designated by the director. ” (Emphasis supplied.)
If the quoted subdivision were to be literally read and applied to a case such as that at bar, where defendant has been seen by a parade of psychiatrists and where there is history of prior confinement and treatment for mental disorder and a chronicle of bizarre and irrational behavior, a court would be bound by the initial examination reports and powerless to come to an independent conclusion as to defendant’s ability to understand the proceedings and to make his defense, even under circumstances where, as here, one of the examining psychiatrists reverses his own reported findings and other experts bolster his revised opinion.
Such a result would be especially absurd when other subdivisions of the same statutory section anticipate instances in which the court will not be restricted by the reported findings of the examining psychiatrists. (Cf. CPL 730.30, subds 3, 4 and CPL 730.50, subd 1.)
Curiously enough, as long ago as 1942, then Assistant District Attorney Fuld, later Chief Judge Fuld of the New York Court of Appeals, saw a similar flaw in the then present *505 section 662 of the Code of Criminal Procedure, a predecessor to the section under discussion here, and called it to the attention of the Governor in a memorandum urging approval of an amendment affording the court power to reach a conclusion as to defendant’s competency which might be at odds with the opinions of the psychiatrists.
What Judge Fuld had in mind then and what we are concerned with now, is whether, in the final analysis, the authority to determine the issue of capacity resides with the psychiatrists or with the courts.
The amendment addressed by Judge Fuld was enacted in 1942, but it did not expressly clarify the law in this regard. It was later held that the Legislature then clearly intended ’[t]o allow the court complete discretion to determine whether or not a defendant is capable of proceeding to trial irrespective of the ñndings of the official examiners(Emphasis supplied; People v Greene, 203 Misc 191; cf. People ex rel. Butler v McNeill, 30 Misc 2d 722, 726.) Our research fails to reveal any indication that the Legislature intended to diminish that discretionary power of the courts in enacting CPL article 730 in general and in passing CPL 730.30 (subd 2) of that chapter in particular.
Consequently, this court construes the affected section and subdivision as being broad enough to place the ultimate responsibility of deciding the legal issue of competency in the court, in cases wherein, following a capacity hearing, the court does not concur with the opinions of the medical experts, whether those opinions are expressed in the originally submitted examination reports or in testimony or in both forms. (People v De Francesco, 20 Misc 2d 854.) In the instant case, a contrary holding and an order for yet another psychiatric examination would only serve to further whipsaw defendant between the medical experts and the court. (Cf. People v Jordan, 35 NY2d 577; Drope v Missouri, 420 US 162; Wieter v Settle, 193 F Supp 318, 322.)
This court finds that defendant, as a result of mental disease or defect, lacks capacity to understand the proceedings against him or to assist in his own defense.
Accordingly, defendant is hereby adjudicated an incapacitated person and he is hereby committed to the custody of the New York State Commissioner of Mental Hygiene for care and treatment in an appropriate institution of the Depart *506 ment of Mental Hygiene to be designated by the commissioner for a period not to exceed one year from the date of this order.