OPINION OF THE COURT
Cornelius J. O’Brien, J.
During a competency hearing conducted pursuant to CPL 730.30 (subd 4) the defendant was voir dired by the court over objection by defense counsel. The issue at bar is whether this questioning of an unsworn defendant, in order to assist the court in determining the defendant’s fitness to proceed, violated his constitutional rights under the Fifth Amendment to the United States Constitution and section 6 of article I of the New York State Constitution.
The facts, insofar as pertinent, are as follows:
On May 2, 1982, the defendant was arraigned in Criminal Court on charges of rape in the first degree (Penal Law, § 130.35) and petit larceny (Penal Law, § 155.25). Judge Michael Corriero ordered a psychiatric examination pursuant to CPL 730.30 (subd 1). Reports of examinations by Doctors Richard Weidenbacher and Daniel Schwartz, both finding the defendant not incapacitated, were submitted to the court, whereon Judge Allen Beldock conducted a hearing on June 11, 1982. Judge Beldock found that the defendant was fit to proceed, and the Grand Jury, on June 14, 1982, returned an indictment charging him, inter alia, *451 with rape in the first degree. Subsequently, on November 3,1982, in Supreme Court, another CPL article 730 examination was ordered by Justice Ralph Sherman at the request of the defense. In compliance with this order, reports were submitted to the court by Dr. Weidenbacher, Dr. Lawrence Cohen and Dr. Ruth Finch. The reports not being unanimous as to whether the defendant was an incapacitated person (CPL 730.30, subd 4), a new CPL article 730 hearing was ordered which was commenced before this court on February 10, 1983.
The People called as a witness Dr. Ruth Finch, a psychiatrist connected with Kings County Hospital. She testified that she had examined the defendant on November 22, 1982, and based upon her examination, found him to possess sufficient mental capacity to understand the proceedings against him and to assist in his own defense. Dr. Lawrence Cohen, a psychologist, then testified on behalf of the defense. Essentially, he stated that, as a result of his December 2, 1982 examination of Albert Grisset, he found the defendant to be unfit to stand trial at that time. Both Dr. Finch and Dr. Cohen conceded that the defendant’s condition could change from the date of their prior examinations to the time of the hearing. In addition to the foregoing testimony, both sides stipulated, on the basis of a report of an examination conducted on November 23,1982 by Dr. Weidenbacher (unavailable as a witness) tiiat Dr. Weidenbacher would testify that the defendant was not fit to proceed.*
The hearing was continued to February 15, 1983, on which date, the court, over defense counsel’s objection, proceeded to question the defendant (who was unsworn and remained at the counsel table) as to his understanding and awareness of the nature of the charges against him and the criminal proceedings in which he was involved.
This questioning of the defendant disclosed, inter alia, that he was disoriented as to time, had little or no idea as to how long he had been confined, did not know what an Assistant District Attorney was, could not remember his *452 attorney’s name, and in this court’s opinion, did not have the ability to establish a working relationship with his attorney or assist in his own defense. (See People v Valentino, 78 Misc 2d 678.)
An “incapacitated person”, as defined in CPL 730.10 (subd 1), is “a defendant who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense.” Whenever this issue of a defendant’s fitness to proceed is raised, the burden falls upon the People to prove competency by a preponderance of the credible evidence (People v Santos, 43 AD2d 73; People v Sanchez, 86 Misc 2d 81; People v Miller, 84 Misc 2d 310). The primary test in determining a defendant’s fitness to proceed is “ ‘whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him’ ” (Dusky v United States, 362 US 402).
The issue as to whether or not a court may properly question a defendant in a competency hearing over objection of counsel in order to aid in determining his fitness to proceed, is apparently sui generis, there being little or no case law dealing with the problem. At the outset, however, from a commonsense point of view, a Judge’s questioning of a defendant to help determine his competency would appear to be sound practice. The issue, after all, is whether a defendant “ ‘has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him’ ” (Dusky v United States, supra, p 402; emphasis added). There is scant logic in restricting the basis of the court’s determination of competency exclusively to testimony of psychiatrists who have conducted examinations months before. As Judge Bernard Tomson wisely recognized in People v Valentino (supra, pp 680-681): “Competency to stand trial is a question of law and fact and should not be the subject of a contest between psychiatric experts * * * [and quoting from Rosenberg, Competency for Trial: A Problem in Interdisciplinary Communication, 53 Judica *453 ture 316, 321] ‘[Competency, in the final analysis, is a legal issue which must be determined by the court with the assistance of the medical expert. It is an abdication by the courts of their prerogatives to blindly follow psychiatric pronouncements which may be based on a partial or total lack of understanding of the issues involved, in a determination of legal, not medical, competence for trial.’ ”
While there have been a number of reported cases wherein the issue of fitness to proceed was determined, at least in part, upon the court’s own observations of the defendant (see, e.g., People v Carl, 58 AD2d 948; People v Sanchez, supra; People v Grieco, 82 Misc 2d 500; People v Veda, 73 Misc 2d 857), no case has been found where the court voir dired the defendant in order to assist in determining competency.
The United States Supreme Court, noting that the Fifth Amendment privilege “is that no person ‘shall be compelled in any criminal case to be a witness against himself’ ”, found that “the availability of the privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites. The privilege may, for example, be claimed in a civil or administrative proceeding, if the statement is or may be inculpatory.” (Matter of Gault, 387 US 1, 49.) There exists “the threat of self-incrimination whenever there is ‘a deprivation of liberty’ ” (McNiel v Director, Patuxent Inst., 407 US 245, 257). Commitment has been held to be such “a deprivation of liberty” on the basis of its being “incarceration against one’s will, whether it is called ‘criminal’ or ‘civil.’ ” (Matter of Gault, supra, p 50.) Regarding a competency hearing under CPL article 730, such as the matter at bar, however, commitment cannot be considered as incarceration against the defendant’s will, since it is the defendant who seeks to be declared incompetent.
Particular attention should be paid to two cases in this area: In Lee v County Ct. of Erie County (27 NY2d 432), the Court of Appeals, while holding that the privilege against self incrimination obtains during pretrial psychiatric examinations, further stated that such “privilege is waived when a defendant interposes his insanity defense * * * This *454 is not to say, however, that any admission as to the crime in question can be considered by the jury in their determination of whether the defendant committed the acts which constitute the crime charged. Nor shall the District Attorney be permitted to use the psychiatric examination as a source of evidence which would be relevant on the issue of guilt” (27 NY2d, at pp 441-442).
More recently, the United States Supreme Court stated, in Estelle v Smith (451 US 454) the following: “The fact that respondent’s statements were uttered in the context of a psychiatric examination does not automatically remove them from the reach of the Fifth Amendment * * * The state trial judge, sua sponte, ordered a psychiatric evaluation of respondent for the limited, neutral purpose of determining his competency to stand trial, but the results of that inquiry were used by the State for a much broader objective [i.e., sentencing] that was plainly adverse to respondent. Consequently, the interview with Dr. Grigson [the examining psychiatrist] cannot be characterized as a routine competency examination restricted to ensuring that respondent understood the charges against him and was capable of assisting in his defense. Indeed, if the application of Dr. Grigson’s findings had been confined to serving that function, no Fifth Amendment issue would have arisen” (supra, p 465; emphasis added).
Lee (supra) differs in its treatment of the Fifth Amendment privilege from Estelle v Smith (supra). Lee (supra, p 441) holds “that the privilege is waived when a defendant interposes his insanity defense.” Logically, the same reasoning would apply where, as here, the defendant asserts his incompetency. Estelle v Smith (supra, p 465) holds that no Fifth Amendment issue arises when the defendant’s statements are used solely for “the limited, neutral purpose of determining his competency to stand trial”. Both cases share, however, a common recognition that the applicability of the Fifth Amendment privilege is to be determined by the use to which the statements are put.
In this case, the defendant was carefully and closely questioned in an effort to ascertain whether or not he was competent to stand trial. The court scrupulously refrained from asking him questions regarding particulars of the *455 crime itself, since there was no need to examine him in that regard. If there was such a need in another case (a bizarre crime, for example) this court would not hesitate to question a defendant on the facts of the crime. The Supreme Court has held in New Jersey v Portash (440 US 450, 459), that “a defendant’s compelled statements * * * may not be put to any testimonial use whatsoever * * * in a criminal trial.”
Statements elicited from a defendant during a voir dire by the court to determine his competency are completely protected under the Portash doctrine. There was no risk of incrimination whatever to the defendant by the court’s questioning him.
By statute in New York (CPL 730.20, subd 6), statements made by a defendant to psychiatrists examining him to determine his competency are inadmissible in evidence against him on any issue other than his mental condition. Under the Portash decision, the same rule applies to compelled statements made to the court. It makes little sense, therefore, in this court’s opinion, for a Judge in a competency hearing to receive statements made months before to a psychiatrist to aid in determining a defendant’s present competency when the Judge can question the defendant directly in light of the holdings in Lee (supra), Estelle v Smith (supra) and Portash (supra).
Accordingly, the People not having proven defendant competent by a preponderance of the evidence and defendant, having been shown to be an incapacitated person within the meaning of CPL 730.10 (subd 1), he is adjudicated an incapacitated person and is committed to the custody of the Commissioner of Mental Hygiene.

 Dr. Weidenbacher had found the defendant to be competent when he examined him (June 3,1982) pursuant to the Criminal Court order, but found him incompetent as of November 23, Í982.