(May 5, 1994)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MIKE WILLIAMS, Also Known as ANDREW CHISOLM, Also Known as THOMAS CHISOM, Appellant. [611 NYS2d 849] —Judgment, Supreme Court, Bronx County (Vincent Vitale, J.), rendered February 21, 1990, convicting the defendant, upon a jury verdict, of robbery in the second degree, and sentencing

him, as a persistent felony offender, to an indeterminate term of imprisonment of from 8 years to life; and judgment, Supreme Court, Bronx County (John Collins, J.), rendered February 27, 1990, convicting the defendant, upon a jury verdict, of robbery in the first degree and robbery in the third degree, and, upon his plea of guilty, of attempted escape in the first degree, and sentencing him, as a persistent violent felony offender, to concurrent indeterminate terms of imprisonment of from 10 years to life on the first degree robbery count and from 3½ to 7 years on the third degree robbery count, to run consecutively to an indeterminate term of imprisonment of from 1½ to 3 years on the attempted escape count, all to run consecutively to the sentence imposed by Vitale, J., reversed, on the law, the judgments of conviction and plea of guilty are vacated, and the matters are remitted for further proceedings consistent herewith.

The defendant was prosecuted under three separate indictments charging him with various counts of robbery and escape. The cases were originally assigned to Judge Vitale who, in an order dated October 5, 1988, directed that examinations be conducted pursuant to CPL article 730 to determine the defendant's capacity to stand trial. The court stated that it was "of the opinion that [the defendant] may be an incapacitated person."

At the time he appeared before Judge Vitale, the defendant was a patient at Mid-Hudson Psychiatric Center, following an August 30, 1988 determination by the County Court of Westchester that he was an incapacitated person. Two prior psychiatric reports, dated July 5, 1988, which were prepared in connection with the Westchester County prosecution, concluded that the defendant lacked the capacity to understand the proceeding against him or to assist in his own defense. The reports also indicated that he had a history of abusing controlled substances and that he had been hospitalized in psychiatric facilities on two previous occasions. Both of the doctors who examined the defendant diagnosed schizophrenia and paranoia and reported that the prognosis was guarded.

Pursuant to Judge Vitale's October 5, 1988 order, the defendant was examined by two staff psychiatrists at Bronx Lebanon Hospital who concluded that although the defendant became non-cooperative when discussing the charges against him and court procedures, in their opinion, his attitude was "voluntary" and probably constituted an attempt to malinger.

They suggested that he receive long-term evaluation at Bellevue Forensic.

In response to this recommendation, the court, on December 21, 1988, directed that the defendant be transferred to Bellevue where he was examined by two more psychiatrists. In reports dated February 14, 1989, these doctors concluded that the defendant was fit to proceed to trial since he was aware of the charges against him, of court procedures and would be able to assist counsel in his defense. The defendant also reportedly told one of the psychiatrists that although he had been uncooperative in past evaluations, he would now like to proceed with his cases.

At the defendant's next court appearance on March 22, 1989, defense counsel moved to controvert the Bellevue CPL article 730 reports and requested permission to have the defendant examined by a defense psychiatrist pursuant to CPL 730.30. The matter was then adjourned to April 12, 1989. On that date, counsel for both sides appeared but in the absence of the defendant. Defense counsel informed the court that after speaking to the psychiatrist he hired to examine the defendant, he was withdrawing the motion to controvert the Bellevue CPL article 730 reports since this psychiatrist concluded that although the defendant had some psychological problems, including delusions, he understood the function of the court and its various participants, and was, therefore, competent to stand trial.

The prosecutor and defense counsel then moved to confirm the reports. The court announced that the cases were ready for trial and adjourned the matters to May 3rd. Defense counsel thereafter stated that he was indicating for the record that although his client was not present, he waived the defendant's appearance. The court then explained that it was five minutes before the lunch hour and that it would take 15 to 20 minutes to bring the defendant to the courtroom since he was being held in an area in the basement of the courthouse. Defense counsel told the court that he would go to the basement directly to inform his client of what transpired.

The defendant proceeded to trial on two of the indictments and was convicted. He pleaded guilty to attempted escape in the first degree in satisfaction of the third indictment.

The defendant maintains that he was deprived of his right to be present at the proceedings against him when the court confirmed the Bellevue CPL article 730 reports in his absence and deemed him fit to proceed. We agree.

A defendant has a Federal due process right to be present at proceedings " 'to the extent that a fair and just hearing would be thwarted by his [or her] absence, and to that extent only" *(People v Morales,* 80 NY2d 450, 453-454, quoting *Snyder v Massachusetts,* 291 US 97, 108). This constitutional right to be present arises "whenever [the defendant's] presence has a relation, reasonably substantial, to the fulness of [the] opportunity to defend against the charge" *(supra,* at 105-106). However, no such right attaches where "presence would be useless, or the benefit but a shadow" *(supra,* at 106-107; *see also, Kentucky v Stincer,* 482 US 730, 745; *People v Morales, supra,* at 454).

To be contrasted with the Federal analysis is the right to be present under State law. A defendant has a statutory right in New York to be present during the trial of an indictment (CPL 260.20). The Court of Appeals has distinguished the right to be present at "trial", e.g., "impanneling the jury, the introduction of evidence, the summing up of counsel, and the charge of the court to the jury, receiving and recording the verdict" *(Maurer v People,* 43 NY 1, 3; *see also, People v Mullen,* 44 NY2d 1, 4) from "ancillary proceedings", including voir dire of prospective jurors, pretrial hearings and hearings conducted during trial *(see, e.g., People v Dokes,* 79 NY2d 656; *People v Sloan,* 79 NY2d 386; *People v Turaine,* 78 NY2d 871; *People v Mullen, supra; People v Anderson,* 16 NY2d 282).

A defendant generally has an unfettered right to attend trial but only a qualified right to attend ancillary proceedings *(People v Morales, supra,* at 457). With regard to ancillary proceedings, the principles set forth in *Snyder v Massachusetts (supra)* have been found to be a " 'sound, fair guide for decision' " *(People v Morales, supra,* at 456, quoting *People ex rel. Lupo v Fay,* 13 NY2d 253, 256, *cert denied* 376 US 958). Thus, a defendant has the right to attend ancillary proceedings when his presence can contribute to the fairness of the outcome *(People v Morales, supra,* at 456). The courts "look to the effect that defendant's absence might have on the opportunity to defend" *(supra,* at 456).

While the competency proceedings in question were "ancillary", the defendant had the right to be present. A key factor in determining whether a defendant has the right to be present during a particular proceeding is whether such proceeding involves factual matters about which the defendant may have specific knowledge that would be useful in advancing his or her position or countering the People's position *(People v Dokes, supra,* at 660).

The competency proceeding herein required more than the resolution of questions of law or procedure to which the defendant's contribution would be negligible *(cf., People v Velasco,* 77 NY2d 469, 472; *People v Rodriguez,* 76 NY2d 918, 921; *People v Ferguson,* 67 NY2d 383; *People ex rel. Lupo v Fay, supra).* Competency to stand trial is a determination made by the court after considering the reports of the psychiatric examiners and any additional evidence or testimony (CPL 730.30 [2]; *People v Gans,* 119 Misc 2d 843, 846; *People v Acevedo,* 84 Misc 2d 563). It involves questions of law and fact *(People v Grisset,* 118 Misc 2d 450, 452; *People v Valentino,* 78 Misc 2d 678).

A court has an independent obligation to assess competency, apart from the positions taken by the experts and parties *(People v Grisset, supra; People v Valentino, supra).* Even where, as here, the psychiatric examiners are in agreement that the defendant is competent to stand trial, a court may, on its own motion, conduct a hearing on the issue (CPL 730.30 [2]). Factors to be considered by a court in determining whether to order a hearing, *sua sponte,* are the existence of a history of irrational behavior, the defendant's demeanor, including his statements and appearance, and any prior medical opinion on his competence to stand trial *(see, People v Arnold,* 113 AD2d 101, 103).

Without passing on the propriety of the court's determination not to order a hearing, *sua sponte,* it was impossible to analyze the required factors in the absence of the defendant and to reach an independent conclusion as to his competency. Clearly his presence would have enabled the court to assess his demeanor. He may also have been able to correct any misimpressions or misstatements of fact contained in the psychiatric reports or to voice any objections to the conclusions reached by the examiners *(see, e.g., People v Dokes, supra; People v Turaine, supra; People v Anderson, supra).* Any inability on his part to comprehend the content or importance of the reports could also have been taken into consideration. His presence would not, therefore, have been " 'useless, or the benefit but a shadow' " *(People v Velasco, supra,* at 473, quoting *Snyder v Massachusetts, supra,* at 106-107).

The People's reliance on this Court's recent decision in *People v Slejska* (197 AD2d 420, *lv denied* 82 NY2d 903) in support of its contention that the defendant's presence was not required at the competency proceeding is misplaced. In *Slejska,* the trial court granted defense counsel's motion for a CPL article 730 examination of his client in the middle of

trial. After receiving the psychiatric reports, which concluded that the defendant was unfit to proceed, defense counsel and the prosecutor moved to confirm the reports in the absence of the defendant. The court confirmed the reports and declared a mistrial based on manifest necessity. This Court found that while the defendant had the right to be present at any material stage of the trial, since no hearing was conducted on defense counsel's unopposed motion to confirm the finding that the defendant was unfit to proceed, counsel's presence, alone, was sufficient.

In conformity with the Court of Appeals' determination in *People v Ferguson (supra)*, counsel in *Slejska* had the authority to request a mistrial in the absence of the defendant since the factors determining whether a mistrial is appropriate are for the lawyer to assess, not the client. The determination as to competency, however, involves an assessment of facts and is made by the court, regardless of the opinion of counsel. The defendant in *Slejska* was also found unfit to proceed and his trial was aborted. This defendant, in contrast, was found fit and forced to proceed to trial. The dissent maintains that the outcome of the proceeding from which this defendant was excluded was " 'wholly favorable' ". It was not favorable to the defendant, who was precluded from any involvement in the proceeding in which he was declared competent, then forced to trial, convicted, and sentenced to a period of incarceration, with a maximum term of life.

The dissent's additional assertion that the defendant received precisely the relief *"he* sought" since *"his* motion to confirm the reports was granted" (emphasis added) is flawed. The defendant never sought such relief and the issue to be decided is whether a lawyer's motion made without his client's consent, can be granted in his client's absence. The last time the defendant appeared in court, his attorney moved to controvert the Bellevue CPL article 730 reports. At the proceeding in question, counsel withdrew the motion and moved to confirm the reports, all in the defendant's absence. As the dissent correctly points out, there is nothing in the record which suggests that defense counsel disobeyed the defendant's wishes or that, had he been present, he would have opposed counsel's motion to confirm. By the same token, since the record is silent, the converse is true. It is equally plausible that the defendant believed that his attorney was going to pursue his motion to controvert the reports, since that was the defense position on the last occasion when the defendant was present.

More importantly, counsel's waiver of the defendant's presence was ineffective, and was attempted not only after the order confirming the reports was made, but after the cases were already adjourned. The right to be present is of a fundamental constitutional nature *(People v Parker,* 57 NY2d 136, 140). A waiver must be executed knowingly, voluntarily and intelligently by a defendant *(supra).* The defendant herein was not given the option of appearing or of waiving his presence. Moreover, it is clear from the record that the only reason the defendant was not brought to court was because securing his presence would take time and intrude upon the lunch hour.

Five years have passed since the determination was made in the defendant's absence, that he was fit to stand trial, rendering a nunc pro tunc determination of his competence virtually impossible *(see, People v Cartagena,* 92 AD2d 901). In order to protect his rights adequately, the judgments of conviction and plea of guilty must be vacated, and the matters remitted for further proceedings, including a finding regarding his fitness to proceed *(Pate v Robinson,* 383 US 375; *People v Arnold, supra; People v Cartagena, supra).*

In light of the foregoing, we do not reach the defendant's remaining contentions. Concur—Murphy, P. J., Rosenberger and Wallach, JJ.

Sullivan, J., dissents in a memorandum as follows: In my view, the circumstances of this case do not warrant reversal since defendant was not deprived of his right to be present at a material stage of the proceedings when, in his absence, the finding of fitness was confirmed. Accordingly, I dissent.

The case is controlled by *People v Slejska* (197 AD2d 420, 421, *lv denied* 82 NY2d 903), in which we held that while defendant has the right to be present at any material stage of the trial, "inasmuch as no hearing was conducted on defense counsel's unopposed motion to confirm the respondent's finding defendant unfit to proceed, counsel's presence, alone, was sufficient." That the defendant in *Slejska* was found unfit to proceed and his trial was aborted and in this case defendant was found fit is a distinction without a difference.

"[D]ue process requires that a defendant be present 'whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.' " *(People v Dokes,* 79 NY2d 656, 659, quoting *Snyder v Massachusetts,* 291 US 97, 105-106.) "In determining whether a defendant has a right to be present during a particular

proceeding, a key factor is whether the proceeding involved factual matters about which defendant might have peculiar knowledge that would be useful in advancing the defendant's or countering the People's position. If so * * * then the defendant has a right to be present." *(Supra,* at 660.) Thus, a defendant's presence is not required "when presence would be useless, or the benefit but a shadow." *(Snyder v Massachusetts, supra,* at 106-107; *see also, People v Dokes, supra,* at 662), i.e., when his presence would be "superfluous" *(People v Dokes, supra,* at 662).

In this case, the outcome of the proceeding from which defendant was excluded, a separate and discrete application, was "wholly favorable." *(People v Favor,* 82 NY2d 254, 267.) He received precisely the relief he sought; his motion to confirm the reports was granted. There is nothing in the record which suggests that defense counsel acted counter to defendant's interest or wishes or that, had defendant been present, he might have opposed defense counsel's motion to confirm.* Thus, his presence would have been "wholly 'superfluous' " *(supra,* at 268, quoting *People v Dokes, supra,* at 662), and reversal is not required. If, as the majority concludes, the test of whether the outcome of a proceeding is "wholly favorable" is the trial's ultimate outcome, there is no phase of a trial resulting in a conviction that would not require a defendant's presence.

In reversing the judgment, the majority relies on the court's independent obligation to assess competency and suggests that, in defendant's absence, the court was unable to make a reasoned determination as to whether it should hold a hearing. *(See,* CPL 730.30 [2].) The existence of a history of irrational behavior, the defendant's demeanor and prior medical opinion as to his competence *(see, People v Arnold,* 113 AD2d 101, 103) are not, as the majority concludes, factors to be considered in determining, after competency examinations, whether to order a hearing, but rather in determining whether to direct a competency examination in the first place. *(See, supra; see also, People v Armlin,* 37 NY2d 167, 171.) In any event, any information the defendant might be able to provide regarding his history of irrational behavior or any prior medical opinion as to his competence would only be elicited if the court held a hearing. None was held in this

---

* Since defendant has at no time made a claim that counsel's representation was inadequate, it is reasonable to infer that defendant consented to or ratified counsel's motion to confirm.

case. As to defendant's demeanor, the court had the opportunity of observing him at other proceedings, the most recent of which was only three weeks earlier. It is difficult to accept the notion that a determination as to whether to confirm reports finding defendant fit to stand trial may turn on something as ephemeral as how a defendant appeared at a particular calendar call. In any event, the right to be present speaks to concerns other than the right to be a mere exhibit.

When the experts agree in an opinion of fitness, the decision of whether or not to conduct a hearing to determine capacity rests within the court's discretion. (CPL 730.30 [2].) There is nothing on this record that suggests that the failure to conduct such a hearing was an abuse of discretion.