[801 NE2d 382, 769 NYS2d 162]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JACQUE-
LINE MENDEZ, Appellant.

Argued September 17, 2003; decided October 23, 2003

**POINTS OF COUNSEL**

*Gerald E. Bodell,* Westport, Connecticut, for appellant. I. The court below erred in ruling that defendant was competent to stand trial because she had a mental illness that caused her to disassociate her mind and person from a rational understanding of the proceedings against her and had no ability to recall facts relevant to time, place and circumstances and was unable to assist counsel. (*Bishop v United States,* 350 US 961; *Dusky v United States,* 362 US 402; *People v Francabandera,* 33 NY2d 429; *Pouncey v United States,* 349 F2d 699; *Wilson v United States,* 391 F2d 460; *People v Tortorici,* 249 AD2d 588, 92 NY2d 757.) II. The trial of defendant was a violation of her due process rights because she was tried without a jury without an understanding of what it meant because of her mental illness and the court failed to hear and determine or find that defendant could or did in fact receive a fair trial as required by law when the record shows that a fair trial was not given. (*Drope v Missouri,* 420 US 162; *Johnson v Keane,* 974 F Supp 225; *People v Vallen,* 128 Misc 2d 397; *Wilson v United States,* 391 F2d 460; *People v Francabandera,* 33 NY2d 429.) III. It was error to convict defendant of manslaughter in the first degree because the State did not prove that defendant had the requisite intent to commit that crime.

*Jeanine Pirro, District Attorney,* White Plains (*Lisa Colosi Florio, Richard Longworth Hecht* and *Richard E. Weill* of counsel), for respondent. I. The finding that defendant was competent, affirmed by the court below, is supported by uncontroverted hearing testimony, and is thus beyond further review by this Court; fit to proceed, defendant was necessarily fit to waive her right to a jury trial. (*Matter of Francis S.,* 87 NY2d 554; *Matter of George L.,* 85 NY2d 295; *People v Gensler,* 72 NY2d 239, 488 US 932; *People v Howard,* 87 NY2d 940; *People v Bleakley,* 69 NY2d 490; *People v Beasley,* 114 AD2d 415; *People v Santos,* 43 AD2d 73; *People v Miller,* 84 Misc 2d 310; *People v Bisnett,* 144 AD2d 567, 73 NY2d 889; *People v Ferguson,* 248 AD2d 725, 92 NY2d 981.) II. The thrust of the defense at trial was that defendant acted under extreme emotional disturbance, rendering untenable her present claim that the manslaughter verdict, which credited that defense, was unanticipated. Defendant's challenge to the proof of her intent to kill Cabrero

is unpreserved and flatly refuted by the record. (*People v Van Norstrand,* 85 NY2d 131; *People v Contes,* 60 NY2d 620; *People v Turriago,* 90 NY2d 77; *People v Gray,* 86 NY2d 10.)

### OPINION OF THE COURT

ROSENBLATT, J.

After an argument, defendant killed her boyfriend with a kitchen knife, resulting in her conviction for manslaughter in the first degree and criminal possession of a weapon in the fourth degree. We are confronted with the question of her competency to stand trial, given her long history of mental illness and hospitalizations.

Supreme Court ordered competency examinations in which defendant was examined by three psychiatrists, all of whom declared defendant competent to undergo trial. After a hearing, the court ordered the case to trial, determining that the People had established defendant's competence by a preponderance of the evidence. The Appellate Division, with one Justice dissenting, affirmed defendant's conviction, holding that Supreme Court correctly determined that defendant was fit to stand trial. A Justice of the Appellate Division granted leave, and we affirm.

### I.

On the morning of the crime, defendant telephoned 911, saying "I think I killed my boyfriend." She gave her address, an apartment house in Yonkers. When the police arrived at the scene, defendant directed them to her boyfriend, Gustavo Cabrero, who was lying in bed with a puncture wound in his chest. Defendant said, "I killed him, didn't I?" The authorities took Cabrero to a nearby hospital where he was later pronounced dead.

The police arrested defendant and took her statement after administering *Miranda* warnings. Defendant said that she was angered by what she felt was Cabrero's infidelity and his bad attitude toward her son. She said that after she and Cabrero returned to bed, she arose, went to the kitchen and got a serrated knife with a six-inch blade. As Cabrero lay in bed, defendant asked him if he was tired. He said he was, and defendant stated, "Don't worry about it because you are going to rest for a long time." She then stabbed him in the chest.

The police transcribed defendant's statement and asked her to sign it, but she refused, saying it contained mistakes. Defendant then gave another statement which differed only in

inconsequential detail as to the sequence of events that led to the stabbing. She refused to sign the second statement. "If you sign the papers," she said, "you can get yourself into trouble." Defendant then asked for a lawyer and the interview came to an end.

After a grand jury indicted defendant for murder, County Court ordered that she undergo a competency examination pursuant to Criminal Procedure Law § 730.30. The court and the parties received the results, by which defendant was found competent to stand trial. Several weeks later, when the case was called for conference, defendant made a written request for a change of counsel. When the court told her she needed a reason, she gave the court another writing explaining that her attorney had previously represented Gustavo Cabrero. The court at first denied the motion, but yielded after defendant persisted and claimed that her lawyer was interested only in getting her to plead guilty.

Based on the newly assigned attorney's request, the court ordered another competency hearing to be performed by three certified psychiatrists. They reported defendant competent to stand trial. After granting defendant's motion for a hearing (CPL 730.30 [2]), the court took testimony from Drs. Abraham Halpern, Norman Weiss and Alan Tuckman. All three testified that defendant was competent.

Dr. Halpern, a Board-certified psychiatrist, discussed the nature of dissociative personality disorder and observed that a person in defendant's condition could have lapses of judgment. He maintained, however, that defendant was much improved since he last examined her and that she seemed generally in contact and oriented. He stressed that she was aware of the plea negotiations and appropriately sought a new attorney when she perceived that she was being pressured to plead guilty. Dr. Halpern stated that when examining defendant he did not encounter multiple personalities in her and had no reason to believe that she was speaking as another person.

Dr. Tuckman, a forensic psychiatrist, testified that during his examination defendant revealed another personality. Defendant told him that there were three people inside her: an adult woman named Jackie, a seven-year-old child and a teenager named Karla. During the examination, defendant was able to present herself as Karla and then revert to Jackie. Dr. Tuckman concluded that defendant was suffering from dissociative personality disorder, and acknowledged that her dissociative

episodes could take place during the trial. He added, however, that because defendant was aware of her other personalities, she had the ability to bring them out or "close them down." He rejected the theory that defendant was acting as an alternate personality when she stabbed her boyfriend, basing this opinion, in part, on her detailed and accurate statements to the police.

Finally, Dr. Weiss testified that defendant was able to respond properly to questions about the role of the judge, jury, defense counsel and prosecutor. He added that defendant could relate the nature of the charges facing her.

Based on the hearing testimony, the court found defendant fit to stand trial. At the nonjury trial, defendant advanced the affirmative defense of extreme emotional disturbance (Penal Law § 125.25 [1] [a]), which, if credited, reduces murder to manslaughter in the first degree. The defense called Dr. Alan Goldstein, a clinical psychologist, who stated that defendant was overwhelmed by her emotions and that the defense of extreme emotional disturbance was consistent with her mental condition at the time of the crime.

The court found defendant guilty of manslaughter in the first degree.

## II.

The test for competence is set forth in CPL 730.10 (1): "Incapacitated person means a defendant who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist his own defense." For purposes of due process, the United States Supreme Court has explained that the defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and . . . a rational as well as factual understanding of the proceedings against him" (*Dusky v United States*, 362 US 402, 402 [1960]; *see also* Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 730.10 at 442).

Article 730 makes no mention of who has the burden of proving or disproving competency and by what standard. We have concluded that the burden should be on the prosecution to establish the defendant's competency by a preponderance of the evidence (*see People v Christopher*, 65 NY2d 417 [1985]), even though a state is free to place the burden on defendant to prove

incompetency by a preponderance of the evidence (*see Cooper v Oklahoma*, 517 US 348 [1996]).*

The dissenting Justice at the Appellate Division cogently pointed out the problems in prosecuting someone whose personalities are "walled off from each other" (297 AD2d 291, 293). There are, however, several reasons warranting affirmance.

Here, the prosecution has carried the burden by a preponderance. All three psychiatrists found defendant competent. Although their analyses and emphases varied, they reached the same conclusion, independently. In essence, they found that defendant was adequately oriented, that she grasped the nature and thrust of the proceedings and that she could assist in her own defense. Defendant points out, correctly, that a competency inquiry involves a legal and not a medical determination (*see People v Tortorici*, 92 NY2d 757 [1999]). While the court was empowered to override the psychiatric opinion, it found no basis to do so.

Nor do we. The Appellate Division majority concluded that the hearing court's determination was correct. Under these circumstances, our review is limited, and defendant may prevail only if we conclude that she was incompetent as a matter of law. In *People v Jordan* (35 NY2d 577 [1974]), we made such a determination, but it was based on a record that included three judicial determinations and psychiatric testimony that defendant was unfit for trial. Here, by way of contrast, the expert testimony was unanimous, concluding that defendant was competent. Moreover, the trial court had the opportunity to observe defendant's behavior and to evaluate the testimony of the psychiatrists in that context.

Critically, the psychiatric testimony does not support defendant's claim that her dissociative personality disorder rendered her incompetent to stand trial. This is not a case in which there is evidence that one personality would have to understand and defend charges arising out of an alleged crime committed by another personality. The trial court concluded that defendant had sufficient insight and recall to understand the charges and assist in her defense. Were we to adopt defendant's argument, we would have to hold that any defendant with dissociative disor-

---

* Some states have required the defense to establish defendant's incompetency by a preponderance of the evidence (*see, e.g., City of Youngstown v Ortiz*, 153 Ohio App 3d 271, 793 NE2d 498 [2003]; *State v Leming*, 3 SW3d 7, 14 [Tenn Crim App 1998]; *State v Armstrong*, 82 NM 358, 482 P2d 61 [1971]).

der is incompetent as a matter of law. We are unwilling to lay down such a rule. In this case we have no cause to disturb the findings of the trial court and Appellate Division.

We have considered defendant's other contentions, and we find them to be without merit.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, GRAFFEO and READ concur.

Order affirmed.