Matter of Erick B. (2004 NY Slip Op 24149)

Matter of Erick B.

2004 NY Slip Op 24149 [4 Misc 3d 202]

April 6, 2004

Family Court, Kings County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, August 4, 2004

[*1]
In the Matter of Erick B., a Person Alleged to be a Juvenile Delinquent, Respondent.
Family Court, Kings County, April 6, 2004

APPEARANCES OF COUNSEL

Michael A. Cardozo, Corporation Counsel, Brooklyn (Christine R. Abbenda of counsel), for petitioner. Legal Aid Society, Brooklyn (Sara Hemmeter of counsel), for respondent. Richard D. Sudano, Albany, for Commissioner of Office of Mental Retardation and Developmental Disabilities.

{**4 Misc 3d at 203} OPINION OF THE COURT

Paula J. Hepner, J.
Following arraignment on the charges, the court remanded the respondent to the Commissioner of Juvenile Justice and adjourned the matter for a probable cause hearing pursuant to section 325.1 of the Family Court Act. The complainant testified on behalf of the presentment agency; the respondent offered no testimonial or documentary evidence and at the end of the probable cause hearing, the court determined the facts in the record would establish the elements of the charges contained in four counts of the petition, all misdemeanors.
On the day the trial was to begin, the respondent made an application to the court for an assessment pursuant to Family Court Act § 322.1, to determine if he is an "incapacitated person."[FN1]

In support of this application, respondent submitted a speech and language evaluation dated March 24, 2000 reporting a diagnosis of autism made at Kings County Hospital when the respondent was between the ages of one and two.
While ordering an examination of a person's capacity lies within the sound discretion of the trial court (People v Morgan, 87 NY2d 878, 880 [1995]), it is nonetheless a court's duty to direct a defendant to be examined "[i]f at any time before final judgment in a criminal action it shall appear to the court that there is reasonable ground for believing that a defendant is in such state of idiocy, imbecility or insanity that he is incapable of understanding the charge, indictment or proceedings or of making his defense" (People v Smyth, 3 NY2d 184, 187 [1957]). Mindful of these principles, however, the Court of Appeals has said that "a defendant is not entitled, as a matter of right, to have the question of his capacity to stand trial passed upon . . . if the court is satisfied from the available information that there is no proper basis for questioning the defendant's sanity" (People v Armlin, 37 NY2d 167, 171 [1975]).[FN2]

Based on the information reported in the speech and language assessment as well as the [*2]concerns voiced by defense counsel about {**4 Misc 3d at 204}the respondent's inability to interact with her and his inability to communicate with her, this court found reasonable grounds to believe the respondent may be an incapacitated person and issued an order directing an examination of the respondent by two qualified psychiatric examiners[FN3]

from the mental health clinic to determine if he is "mentally ill, mentally retarded or developmentally disabled,"[FN4]

and if he can understand the nature of the proceedings and assist in his defense. Once a court makes the threshold determination that a defendant's conduct warrants psychiatric examination, the court must comply strictly with competency procedures (People v Torres, 162 AD2d 482 [1990]).
Upon receipt of the reports of Jill Miller, Ph.D., who diagnosed the respondent with autism[FN5]

and borderline intellectual functioning, and Lawrence R. Kaplan, Ph.D., who diagnosed the respondent with pervasive developmental disorder not otherwise specified (atypical autism; PDDNOS),[FN6]

and upon their respective opinions that as a consequence of these deficits the respondent is not able to understand the nature of the proceedings and to assist in his defense, the notice required under Family Court Act § 322.2 (1) was given to the Commissioner for the Office of Mental Health and the Commissioner for the Office of Mental Retardation and Developmental Disabilities and the matter was set down for a hearing to determine whether the respondent is an incapacitated person.{**4 Misc 3d at 205}
On the adjourned date, the court received reports from psychologists Karlaye Rafindadi, from the Office of Mental Health, and Herbert A. Medetsky, Ph.D., from the Office of Mental Retardation and Developmental Disabilities. Ms. Rafindadi, like Dr. Kaplan, reported a diagnosis of "pervasive developmental disorder NOS" and concluded that he is an incapacitated person. Dr. Medetsky, like Dr. Miller, reported a diagnosis of autism with mild mental retardation but he did not express an opinion about the respondent's ability to understand the nature of the proceedings or assist in his defense. Dr. Medetsky viewed respondent's greatest deficits to be in the areas of socialization and found them to be consistent with a diagnosis of Asperger's disorder.[FN7]

[*3]
At the hearing Drs. Jill Miller and Lawrence R. Kaplan testified and their reports were admitted into evidence along with the reports of Dr. Medetsky and Ms. Rafindadi. In addition, the following documents were introduced into evidence: (1) a letter dated February 24, 2004 from Maimonides Hospital Department of Psychiatry indicating the respondent carries a dual diagnosis of pervasive developmental disorder (autistic disorder spectrum) and psychotic disorder and was prescribed Risperdal, an antipsychotic medication, (2) a letter dated November 12, 2003 from the Maimonides Hospital Department of Psychiatry indicating the respondent has been a patient there since October 2001 and carries a diagnosis of pervasive developmental disorder, (3) a speech and language evaluation dated March 24, 2000, (4) a psychological evaluation dated June 27 and July 21, 2000, and (5) a psychiatric evaluation dated November 24, 1999.
Family Court Act § 301.2 (13) creates a two-pronged analysis for defining an "incapacitated person," the first involving a clinical assessment of a person's mental status and the second involving a functional assessment of the impact any identified psychological impairments would have upon a person's ability to comprehend and meaningfully participate in a legal proceeding. To be certain both criteria are met, Family Court Act § 322.1 (3) requires each examiner to render an "opinion as to whether the respondent is or is not an incapacitated person, [to describe] the nature and extent of his examination and, if he finds {**4 Misc 3d at 206}the respondent is an incapacitated person, [set forth] his diagnosis and prognosis and a detailed statement of the reasons for his opinion by making particular reference to those aspects of the proceedings wherein the respondent lacks capacity to understand or to assist in his own defense."
What factors a court should evaluate in determining whether someone is an "incapacitated person" was addressed by the Supreme Court in Dusky v United States (362 US 402 [1960]). The Court held (at 402) that "it is not enough for the district judge to find that 'the defendant (is) oriented to time and place and (has) some recollection of events,' but that the 'test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understandingand whether he has a rational as well as factual understanding of the proceedings against him.' " The Dusky test for capacity has been adopted as the standard in New York (People v Mendez, 1 NY3d 15, 19 [2003]; People v Francabandera, 33 NY2d 429 [1974]).[FN8]

The following six factors have been identified for courts to consider in regard to the question of competence to stand trial: (1) whether the defendant is oriented to time and place; (2) whether the defendant is able to perceive, recall and relate; (3) whether the defendant has an understanding of the process of the trial and the roles of the judge, jury, prosecutor and defense attorney; (4) whether the defendant can establish a working relationship with his attorney; (5) whether the defendant has sufficient intelligence and judgment to listen to the advice of counsel and, based on that advice, appreciate (without necessarily adopting) the fact that one course of conduct may be more beneficial to him than another; (6) whether the defendant is sufficiently stable to enable him to withstand the stresses of the trial without suffering a serious prolonged or permanent breakdown (People v Picozzi, 106 AD2d 413 [2d Dept 1984]).
The first prong of the definition of capacity has been solidly established with the clinical [*4]diagnoses of the respondent's mental {**4 Misc 3d at 207}condition by each of the four "psychiatric examiners" involved in this case. They are uniform in their conclusion that the respondent has a pervasive developmental disorder and diverge only in regard to which subcategory thereof his clinical profile meets. Of the three examiners who conducted a full competency analysis, there is unanimity of opinion that the respondent's perceptual deficits, cognitive limitations, language comprehension and communication difficulties, limited awareness of social conventions, disorganized thought processes, and difficulty forming social relationships impair his ability to: (a) understand the judicial system and the adversarial process, specifically the roles of the judge, prosecutor and defense attorney, (b) develop a working relationship with his attorney, (c) know what would be required of him to assist his attorney in representing him, (d) comprehend his attorney's advice and process the information to make an informed choice about the plea options that may be available to him or the particular theory of defense to pursue. While there was some disagreement about the respondent's orientation to time and place and minor differences of opinion about his ability to perceive, recall and relate, these matters are not sufficient to override the overwhelming evidence of intellectual and psychological impairment. The evidence in the record fulfills the Dusky and Francabandera requirements.
Our legal system is built upon a presumption of competence and fitness to proceed (People v Gelikkaya, 84 NY2d 456, 459 [1994]), therefore a defendant has the burden of going forward to show some evidence calling into question the presumption of fitness and the capacity to understand the proceedings against him or assist in his defense (People v Vega, 73 Misc 2d 857 [1973]), but it is the prosecutor who has the burden of persuasion and must prove the defendant is not an incapacitated person "by a preponderance of the evidence" (People v Mendez, 1 NY3d 15, 19 [2003]).
Based on the evidence in the record, the court finds the respondent has adduced evidence that rebuts application of the presumption of fitness and further finds that the prosecution has failed to prove the respondent is not an "incapacitated person" as defined in the Family Court Act. As a consequence of the court's prior finding of probable cause (Matter of Ardon II, 175 AD2d 355 [3d Dept 1991]), this court hereby commits the respondent to the custody of the Commissioner of the Office of Mental Retardation and Developmental Disabilities for a period of {**4 Misc 3d at 208}90 days, pursuant to Family Court Act § 322.2 (4). The petition is dismissed.

Footnotes

Footnote 1: Family Court Act § 301.2 (13) defines an "incapacitated person" as a respondent "who, as a result of mental illness, mental retardation or developmental disability . . ., lacks capacity to understand the proceedings against him or to assist in his own defense."

Footnote 2: Despite the court's use of the word "sanity," Armlin was a case about the defendant's fitness to proceed and not about the defendant's capacity to know or appreciate the nature and consequences of his conduct by reason of mental disease or defect.

Footnote 3: CPL 730.10 (7) defines "psychiatric examiner" as a "qualified psychiatrist or a certified psychologist."

Footnote 4: Definitions for each of these terms are found in Mental Hygiene Law § 1.03 (20), (21) and (22) and were included in the original decision but they have been deleted from this footnote for purposes of publication.

Footnote 5: The diagnostic code for autistic disorder in the Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association (4th ed 1994) is 299.00. The criteria for this diagnosis were included in the original decision but they have been deleted from this footnote for purposes of publication.

Footnote 6: Five specific types of disorders comprise the category of pervasive developmental disorderautistic disorder, Rett's disorder, childhood disintegrative disorder, Asperger's disorder and pervasive developmental disorder not otherwise specified. The diagnostic code for PDDNOS (atypical autism) in the Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association (4th ed 1994) is 299.80. The criteria for this diagnosis were included in the original decision but they have been deleted from this footnote for purposes of publication.

Footnote 7: The diagnostic code for Asperger's disorder in the Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association (4th ed 1994) is 299.80. The criteria for this diagnosis were included in the original decision but they have been deleted from this footnote for purposes of publication.

Footnote 8: Like article 730 of the Criminal Procedure Law, Family Court Act §§ 322.1 and 322.2 are silent in regard to the burden of proof and the standard of evidence in a proceeding to determine capacity. The provisions of the Family Court Act are analogous to the CPL. Under Family Court Act § 303.1 (2), a court "may . . . consider judicial interpretations of appropriate provisions of the criminal procedure law to the extent that such interpretations may assist the court in interpreting similar provisions" of the Family Court Act. This court sees no reason why the holding of Mendez should not apply with equal force to capacity proceedings involving juveniles under the Family Court Act.